[No. B002150. Second Dist., Div. One. Nov. 29, 1984.]

In re STEPHEN L., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN L., Defendant and Appellant.

258

**COUNSEL**

Donna L. Groman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

## LEETHAM, J.*—

### Background Summary

From the record and as summarized in the briefs of the parties, on April 28, 1983, the Los Angeles County District Attorney petitioned the juvenile court with respect to the appellant Stephen L., 15 years of age (hereinafter referred to as the Minor) under Welfare and Institutions Code section 602. The petition charged that appellant did willfully and unlawfully carry concealed upon his person a dirk and dagger, thereby violating section 12020, subdivision (a) of the Penal Code, a felony. The matter thereafter, lawfully proceeded to an adjudication hearing on July 6, 1983, where the juvenile court sustained the petition after hearing the evidence. At the same hearing the juvenile court heard and denied a motion made on behalf of the Minor to suppress certain evidence. On October 20, 1983, the Minor was declared a ward of the court and was placed home on probation in the care of his mother. As a condition of probation the Minor was ordered to spend 15 days Ricardo M. time (*In re Ricardo M.* (1975) 52 Cal.App.3d 744 [125 Cal.Rptr 291]) in juvenile hall or participate in the J.A.W.S. program. An additional 30 days in juvenile hall was stayed pursuant to Welfare and Institutions Code section 777, subdivision (e). Promptly thereafter an appeal was taken on behalf of the Minor to this court.

The facts of the incident involving the Minor appear to be as follows: On March 3, 1983, at approximately 6 p.m., as it was getting dark, Police Officer John Brown and his partner, Officer De La Roca, were on patrol in full uniform. They were assigned to the West Bureau CRASH (an LAPD detail dealing with street gangs), working in the Hollywood area. At that time, the officers were in the vicinity of Lemon Grove Park because they had received complaints regarding vandalism and graffiti written on the walls of the administration building. Lemon Grove Park was a known hangout for the Clanton Street gang and Officer Brown was aware of prior violent gang activity at this park.

Officers Brown and De La Roca entered the courtyard of the park's administration building area on foot and observed "freshly painted gang type graffiti on the walls," which "was really new graffiti" within a day or two old. The graffiti included the word "Clanton," the Clanton gang logo "C14" and numerous names and nicknames of members of the gang. When the officers entered the courtyard area they saw six gang men standing in a

---

*Assigned by the Chairperson of the Judicial Council.

group; four of whom (not including the Minor) were recognized as members of the Clanton Street gang. The group was standing three to four feet from a wall with graffiti on it, and no one else was in the courtyard. As soon as the officers entered the courtyard and moved toward the group, the group split into two segments and apparently attempted to leave the area in two different directions. Up until this moment, no words had been spoken. The officers detained the six youths "to make an investigation for possible vandalism." Officer Brown patted down the youths, including the Minor, looking for weapons and possibly spray paint cans; one of the considerations for which was the fact that there were six youths and only two officers. Officer Brown also testified that street gang members have been known in the past to carry weapons and felt that if they did have weapons, for safety purposes the officers would take them away from them. When Officer Brown patted down the Minor he felt a knife sheath on the right side of his belt, which was covered by his shirt and jacket. Officer Brown removed the knife from the Minor's person, which was a folding locking blade buck knife with an approximately four and one-half inch blade. Thereafter, the present proceedings were initiated.

## DISCUSSION

It is asserted that the Minor here was illegally detained and that the cursory search for weapons on him was constitutionally improper. We are mystified, after a recital of the foregoing facts, just what improvement in conduct we are being urged to require of police officers in a situation such as here presented. Certainly, the patrolling of parks and recreational areas is desirable. The investigation of vandalism and persons found next to new instances of the same is an activity for which police officers are hired. Failure to cursorily search suspects for weapons in a confrontation situation in an area where gang activity and weapon usage is known from the officers' past experience would be most careless. Furthermore, it is the character of the incident and not the degree of acquaintanceship with suspects which should determine the conduct of a conscientious police officer. (Thus, it certainly should not be contended that the police officers were entitled to pat-down search only the four suspects they previously knew and not the Minor who was an integral part of the group found next to the vandalized wall.)

People v. Superior Court (Kiefer) (1970) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559], teaches that "hunch" searches are improper, but Justice Mosk's opinion concedes (at p. 819) that even a "furtive gesture" in some circumstances could constitute probable cause to justify a search. The cumulation of circumstances in this present case would have suggested dereliction of duty on the part of the police officers if they had not detained for investigation and taken the precaution

of a pat-down search. ■ The police officers here more than fulfilled the mandate of law with respect to detentions. (See *People* v. *Aldridge* (1984) 35 Cal.3d 473, 478 [198 Cal.Rptr. 538, 674 P.2d 240].) The record abounds with the required articulable facts for a detention. ■ Furthermore, in conducting a pat-down search: "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868].) We think that the circumstances more than warranted the cursory search of Minor. (See *People* v. *Suennen* (1980) 114 Cal.App.3d 192, 198 [170 Cal.Rptr. 677]; *People* v. *Allen* (1975) 50 Cal.App.3d 896, 900 [123 Cal.Rptr. 80].) It follows, that on discovery of the knife on Minor's person, contrary to Penal Code section 12020, subdivision (a), an offense had been committed under our law.

The rulings of the learned trial judge in this matter were correct. Furthermore, he displayed a truly remarkable compassion in the disposition of this matter in view of his summary on the record: "THE COURT: Well, this was a case where he had a knife, and he was involved with the Clanton gang, and two prior contacts with the police, which were not sustained, and his attitude in a probation report was not good. He blames his not going to school on the fact that his mother doesn't wake him up in time, which is a lame excuse." It is not surprising that we do not have the rote complaint of "cruel and unusual" in this case.

In concluding this matter, as our present juvenile law requires, we note that a good many thousands of dollars in public expense has been occasioned. Of course, justice can never be equated with cost. However, it might be well to equate the characteristics of the offense with its processing costs, particularly where the appeal of juvenile matters now follows the same cumbersome procedure as if a defendant had been convicted of murder. With the background and nature of the present offense, an adult defendant would most likely have been diverted to the municipal court—with expedited review, if required, and at much less expense in the appellate department of the superior court. If this case activates any overdue change of law it will have served a far more useful purpose than its characteristics entitle it.

Our attention has been called to *In re Javier A.* (1984) 159 Cal.App.3d 913 [206 Cal.Rptr. 386], certified for publication and filed on August 31, 1984, wherein another division of this court in a lengthy opinion, although affirming a judgment under *In re Daedler* (1924) 194 Cal. 320 [228 P. 467], calls on the California Supreme Court to overturn the longtime rule that the Juvenile Court Laws are framed to protect a minor and therefore do not require jury trial. We respectfully disagree with the views expressed in *In*

*re Javier A., supra,* and point out that the logical conclusion to such reasoning is to return our society to an early and harsher era where there were no distinctions between youth and adults; processing housing and punishment to be without difference. Furthermore, the primary effect would be to exacerbate the problems of an already overloaded justice system.

The orders of the juvenile court are affirmed.

Spencer, P. J., concurred in the judgment.

**HANSON (Thaxton), J.**—I concur in the lead opinion. I also concur with the observation that the juvenile justice appellate procedures are long overdue for major reform.

While stability and continuity are desirable attributes in both areas of substantive law and procedural law, the latter area should be less resistant and more responsive to change than the former. Indeed, *in the public interest,* it is the duty of every member in the legal community to work for improved procedures designed to cut delay and costs.

In the spirit of constructive criticism and pursuant to the standards and purposes for publication as set forth in California Rules of Court, rule 976(b), the following is directed toward much needed reform of the appellate procedures in juvenile cases.

## BACKGROUND

STATUTORY LAW: California's Welfare and Institutions Code,[1] chapter 2, contains Juvenile Court Law. *Section 601* pertains to minors habitually refusing to obey parents, habitual truants and minors in danger of leading immoral lives. *Section 602* covers minors violating laws defining crime and minors failing to obey court orders. *Section 300* addresses the problem of those minors in need of effective parental care, destitute, or with unfit homes, and those physically dangerous to the public or themselves. Cases brought under sections 601 and 602 are collectively referred to as *delinquency* proceedings and those under section 300 as *dependency* proceedings. *Section 245* confers jurisdiction on all matters contained in chapter 2 in the superior court.

RULES OF COURT: California Rules of Court,[2] *Juvenile Court Rules,* rule 1396,[3] provides in pertinent part as follows: "(a) [Right to appeal—§§ 601-

---

[1]Unless otherwise indicated, all code *sections* refer to the Welfare and Institutions Code.

[2]Unless otherwise indicated, all *rule* references are to the California Rules of Court.

[3]Adopted by the Judicial Council of the State of California.

602 proceedings] In proceedings under section 601 or 602, *the minor may appeal from any judgment, order or decree specified in section 800.*[4] The parent or guardian may appeal from any judgment, order or decree specified in section 800 in which the minor is removed from physical custody of the parent or guardian. *The minor and parent or guardian are entitled to representation by counsel on appeal and, if indigent, may have counsel appointed by the reviewing court.* In the absence of an actual conflict of interest, it is presumed that one attorney may represent the interests of both the minor and the parent or guardian. [Italics added.]

"(b) [Right to appeal—§ 300 proceedings] In proceedings under section 300, *the petitioner, minor, and the parent or guardian may appeal from any judgment, order or decree specified in section 395.*[5] *All appellants are entitled to representation by counsel and, if indigent, the minor and parent or guardian may have counsel appointed by the reviewing court.* In the absence of an actual conflict of interest, it is presumed that counsel for the petitioner will represent the interest of the minor on appeal." (Italics added.)

---

[4]Section 800 provides: "A judgment in a proceeding under Section 601 or 602, or the denial of a motion made pursuant to Section 262, may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment. Pending appeal of the order or judgment, the granting or refusal to order release shall rest in the discretion of the juvenile court. The appeal shall have precedence over all other cases in the court to which the appeal is taken.

"A ruling on a motion to suppress pursuant to Section 700.1 shall be reviewed on appeal even if the judgment is predicated upon an admission of the allegations of the petition or even if the judgment is a dismissal of the petition or any count or counts thereof; however, no appeal by the people shall lie as to any count which, if the people are successful, will be the basis for further proceedings subjecting any person to double jeopardy in violation of the state or federal Constitution.

"A judgment or subsequent order entered by a referee shall become appealable whenever proceedings pursuant to Section 252, 253, or 254 have become completed or, if proceedings pursuant to Section 252, 253, or 254 are not initiated, when the time for initiating the proceedings has expired.

"An appellant unable to afford counsel shall be provided a free copy of the transcript.

"All appeals shall be initiated by the filing of notice of appeal in conformity with the requirements of Section 1240.1 of the Penal Code."

[5]Section 395 provides: "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; but no such order or judgment shall be stayed by the appeal, unless, pending the appeal, suitable provision is made for the maintenance, care, and custody of the person alleged or found to come within the provisions of Section 300, and unless the provision is approved by an order of the juvenile court. The appeal shall have precedence over all other cases in the court to which the appeal is taken.

"A judgment or subsequent order entered by a referee shall become appealable whenever proceedings pursuant to Section 252, 253, or 254 have become completed or, if proceedings pursuant to Section 252, 253, or 254 are not initiated, when the time for initiating the proceedings has expired.

"An appellant unable to afford counsel shall be provided a free copy of the transcript."

STATISTICS: The 1984 Judicial Council Annual Report contains statewide statistics on filings in the superior courts and in the Courts of Appeal. The statistics treat separately filings in the juvenile courts of the superior courts but do not break down the appeals taken from the juvenile courts to the Courts of Appeal. Even though a goodly percent of juvenile delinquency and dependency filings in the superior courts are shown as being disposed of before hearing, or as uncontested matters, the magnitude of the impact on the Courts of Appeal becomes evident by the large number of juvenile filings at the superior court level.

The Judicial Council Annual Report at page 118, contains *statewide* statistics showing that during fiscal year (FY) 1982-1983, *77,477* juvenile *delinquency* (§§ 601 and 602) cases were filed in the superior court.[6] During FY 1982-1983, there were *23,179* juvenile *dependency* (§ 300) cases filed.

The report shows, at pages 204-206, that during the previous year (FY 1981-1982) *statewide,* there were *79,591* juvenile delinquency filings and *23,045* juvenile dependency filings. Thus, during the last reported two-year period (1981-1983) there were a total of *157,068* delinquency filings and *46,224* dependency filings in the superior court.

## THE PROBLEM

Justice Macklin Fleming,[7] in his "Remarks on Retirement from the Court of Appeal" on August 13, 1981, commented on a major problem plaguing California's intermediate courts of review. He correctly observed that, "*A large percentage of cases arriving at the Court of Appeal do not belong by any stretch of the imagination in California's second highest court. For example, all decisions of the juvenile court are appealable. Recently we had a routine appeal by a juvenile who had stolen a bicycle and been placed on home probation. Another was from a 16-year-old girl contesting a 10 p.m. to 5 a.m. curfew as a condition of probation.* All judgments in criminal cases are appealable. Indigent defendants [minors and adults] with a free appeal, free transcript, and free counsel have nothing at risk, and consequently nothing to lose. Approximately 50 to 75 percent of these criminal appeals are completely baseless and accomplish nothing but congestion of calendars." (Italics added.)

---

[6]During FY 1982-1983, 75,467 cases were filed under *section 602* and about 2,010 cases were filed under *section 601.*

[7]See also generally, Fleming, Of Crimes and Rights (1978), and Fleming, The Price of Perfect Justice (1974).

## Discussion

The two juvenile cases mentioned by Justice Fleming and the instant case[8] are representative of the types of the bulk of juvenile cases handled by California's second highest court. The scenario is that under present procedures juvenile delinquents, who have broken the law and are living at home on probation under parental control, are permitted to (figuratively speaking) jump aboard the appellate process train in the Courts of Appeal, activate the throttle by merely filing a form, often "in propria persona" (see appen. A), and then leaving the train on automatic pilot to run its course. As previously noted, *written opinions _must_ be filed in every case* on review by the Court of Appeal, including juvenile appeals, irrespective of the frivolousness of the appeal, irrespective of the magnitude of the minor's misconduct, irrespective of the minor's age, and irrespective of the fact that the "medicine" prescribed for correcting the minor's errant ways by the juvenile trial court often involves little or no incarceration with the minor being sent home on probation under parental control.

Paradoxically, *adults* convicted of criminal activity in the municipal courts are subject to jail sentences up to a year and large fines. They appeal to the appellate departments of the superior court (which is usually the end of the road) where *written opinions are _not_ required in all cases* under rules 106 and 190.[9]

Does it make sense to burn up judicial time and effort rendering written opinions on *every* juvenile case? *NO!* Can California's appellate procedures

---

[8]In the case at bench, we have a 15-year-old minor involved in gang activities. The petitioner, under section 602 of the Welfare and Institutions Code, charged that he "willfully and unlawfully carried concealed upon his person a dirk and dagger" in violation of Penal Code section 12020, subdivision (a), a felony. The minor was represented in the juvenile court by a court-appointed counsel pursuant to Welfare and Institutions Code section 700; the trial court denied a motion to suppress the weapon, and sustained the petition. At a later disposition hearing, this juvenile defendant was declared a ward of the court and placed home on probation in the care of his mother.

The minor in the instant case "In Propria Persona" filled in and signed the mimeographed form "Notice of Appeal; Statement of Points on Appeal; Designation of Record on Appeal" which is attached as Appendix A.*

[9]*Rule 190,* applicable to appeals by *adults* from municipal and justice court criminal cases to the *appellate departments of the superior court,* in part, provides that such appeals be "acted upon as prescribed in the rules adopted by the Judicial Council for appellate departments of the superior court."

*Rule 106* of the "Rules on Appeal to the Superior Court" provides, amongst other things, that "[t]*he judges of the appellate department shall not be required to write opinions in any cases decided by them, but may do so whenever they deem it advisable or in the public interest.*" (Italics added.)

*Identification of the minor has been excised from appendix A in order to conform to the caption.

for reviewing juvenile cases be handled in a more cost effective and more expeditious manner? *YES!*

## THE SOLUTION

Justice Fleming, during his remarks at the time of his retirement, suggested a solution for cutting delay and cost for processing both juvenile and adult appeals which deserves serious consideration. In addressing the problem of *input* into the appellate process of baseless appeals in the Court of Appeal, Justice Fleming suggested that the Court of Appeal should be afforded some control of the appellate court's calendar. He stated: "My solution to the problem of baseless appeals in the Court of Appeal is, again, not more appellate justices to hear useless appeals, but the solution that has been adopted for other appellate courts—more control over the [intermediate appellate] court's calendar." He concluded that *"No additional judicial machinery is needed. All that is required is to make certain categories of causes, such as review of juvenile court judgments and of criminal judgments, reviewable by grant of petition rather than by right of appeal.* The process would be comparable to that used in England, where a defendant must obtain from the higher court leave to appeal in order to perfect his appeal. The end product of such a screening process would be greater concentration by the Court of Appeal and its justices on those difficult cases where the skill and experience of the justices are needed. Such screening, I believe, is essential to maintain the authority of this court and its opinions and thereby prevent the Supreme Court from being further inundated with business." (Italics added.)

## RECOMMENDATION

In view of the foregoing and in the interest of judicial efficiency and economy, it is recommended that the Judicial Council consider: 1) taking steps directed at obtaining such constitutional or legislative amendments which would authorize the Courts of Appeal to review juvenile court judgments by grant of petition rather than by right of appeal, *OR,* 2) making necessary rule changes which would result in the transfer of all juvenile appeals from the Courts of Appeal to the appellate departments of the superior court which operate under rule 106. (See fn. 9, *ante.*)

Appellant's petition for a hearing by the Supreme Court was denied January 23, 1985.

APPENDIX A

Stephen L
Name
Address
Telephone

In Propria Persona

FILED

NOV 1 1983

JOHN J. CORCORAN, County Clerk
BY _____
DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES, JUVENILE COURT

PEOPLE OF THE STATE OF CALIFORNIA, )     S.C. NO. J 55 8398
                        Plaintiff, )   NOTICE OF APPEAL;
                                    )   STATEMENT OF POINTS
        vs.                         )   ON APPEAL;
STEPHEN L                           )   DESIGNATION OF RECORD
                        Defendant. )    ON APPEAL

    Minor hereby appeals from:

(✓)  The order of the above-entitled court sustaining the petition filed on 4-28-83 and declaring said minor a ward of the court.

(✓)  The subsequent order of said court dated 10-20-83 _____.

    The following issues will be raised on appeal:

( )  Lack of substantial evidence to support the findings of the court.

(✓)  Illegal search and seizure.

( )  Inadmissible confession admitted.

( )  Disposition was contrary to law.

( )  Inadmissible evidence was allowed to come into evidence, prejudicing the minor's trial.

( )  Improper lesser offense was sustained.

( )  Improper restriction of cross-examination and/or presentation of evidence by the minor.

///
///

-1-

( )   Violation of the right of discovery.
( )   Prejudicial destruction of material evidence by
      the prosecution.
( )   Impermissibly suggestive identification procedures
      taint the in-court identification.
( )   Failure to disclose an informant.
( )   Prosecutorial misconduct.
( )   Violation of speedy trial.
( )   Reasons stated in application for rehearing.
( )   Other

        The minor hereby requests additional record on
his appeal, namely:
        Clerk's Transcript to include:
( )   Written motions made and notices of motion given
      by either side, and affidavits filed in support
      of or in opposition to any motion;
( )   Any written opinion of the juvenile court;
( )   Any probation officer's report relating to the
      action.
        Reporter's Transcript to include:
( )   Proceedings on all prehearing motions;
( )   Opening statements;
( )   Oral arguments to the court;
( )   Any oral opinion rendered by the juvenile court.

        Said additional record is necessary to the
proper presentation of the minor's points on appeal; in
that:

                        -2-

_Stephen L_
Signature of minor or parent

SO ORDERED:

JUDGE OF THE SUPERIOR COURT

-3-