215 Cal.App.3d 1267 (1989)
266 Cal. Rptr. 352
In re DANIELLE M. et al., Persons Coming Under the Juvenile Court Law.
CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
DURRETT M. et al., Defendants and Appellants.
Docket No. A042926.
Court of Appeals of California, First District, Division Five.
November 21, 1989.
*1268 COUNSEL
Patricia L. Watkins and Susan C. Gwinn for Defendants and Appellants.
Louise H. Renne, City Attorney, Loretta M. Giorgi and Kenneth T. Phillippi, Deputy City Attorneys, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
KING, J.
We publish our opinion in this case to once again bring to the attention of the Legislature once again the need to change the process for appellate review of juvenile court determinations, especially in dependency proceedings. The present method of review by appeal fails to protect the rights of the parties fully and imposes an unnecessary additional workload on already overburdened Courts of Appeal and public legal offices representing the City and County of San Francisco Department of Social Services (Department) which filed the present dependency petition.
Marlette P. and Durrett M. separately appeal from an order declaring their two daughters dependent children and placing them in the custody of their paternal grandmother.
*1269 On February 26, 1988, based on several relative referrals and two home visits by a social worker, the Department filed a petition alleging that Danielle and Kiana M., then aged one and four, came within the provisions of Welfare and Institutions Code section 300, subdivision (a).[1] After a contested detention hearing on March 23, the children were placed with their father, Durrett M., in the home of his mother, Gloria Johnson. On May 19, 1988, after a contested jurisdictional and dispositional hearing, the trial court declared Danielle and Kiana to be dependents of the court and placed them in the custody of their paternal grandmother. The trial court denied the father's petition for rehearing.
In support of its dispositional order, the trial court found 1) an award of custody to the parents would be detrimental to the children and an award to a nonparent was in their best interest (Civ. Code, § 4600), 2) there would be substantial danger to their physical health if they were returned home and no reasonable means to protect them without removing them from their parents' physical custody (Welf. & Inst. Code, § 361, subd. (b)(1)), and 3) reasonable efforts had been made to eliminate the need for their removal from home (Welf. & Inst. Code, § 361, subd. (c)). Specifically, the trial court cited the mother's drug abuse and failure to provide adequate food, clothing, and a clean, safe environment, and stated that "the father is unable to care for [the children] because of lack of employment and separate residence."

I, II[*]
.... .... .... .... .... .

III
Welfare and Institutions Code section 361.2, subdivision (a), provides in pertinent part: "When a court orders removal of a minor pursuant to Section 361, the court shall first determine whether there is a parent of the minor, with whom the minor was not residing at the time that the events or conditions arose that brought the minor within the provisions of Section 300, who desires to assume custody of the minor. If such a parent requests custody the court shall place the minor with the parent unless it finds that *1270 placement with that parent would be detrimental to the minor." (1) Durrett contends the only factors stated in support of the trial court's finding that placement with him would be detrimental to his daughters  lack of employment and a separate residence  are insufficient as a matter of law.
The Department does not deny that these are the only reasons Durrett was denied custody, nor would the record support such a denial. Durrett's mother, Gloria Johnson, testified that Durrett has lived with her since he left Marlette and has been the girls' primary caretaker since they were placed in her home. Pederson, the social worker, consistently praised Durrett's parenting and relationship with his daughters. When asked, "assuming the paternal grandmother was not in her home, but just the father there with the children, do you think, with the aid of the Department, the assistance of the Court, that the children could be placed in his custody and not suffer any substantial [sic] risk of danger?" Pederson responded "Yes, I do." She said Durrett had been very cooperative with the Department.
Pederson repeatedly testified that Durrett's current unemployment and lack of his own home were the only reasons he was unable to take care of his children, but she had difficulty elaborating. On cross-examination she said the children would be at substantial risk of danger in their father's custody if he had no way to support them or were living in the street. She admitted that if he had custody of the children he would be eligible for AFDC payments. She said it is important that he have a home of his own because "it proves that he's stable and competent enough to have care of his children, in my opinion." She had not looked into assisting Durrett in obtaining emergency shelter.
The other social worker, Payne, testified that at the March 23 detention hearing, despite an earlier negative assessment of Durrett, she recommended the children be placed in his custody at his mother's house. Looking back, she thought the decision had been correct. She described the Johnson/Durrett M. home as very clean, neat, well-organized, quite safe and adequate. "And there was an overabundance of food, lots and lots of food," she said. She saw no ill effects of the father being in the grandmother's home with the children. When asked if there would be substantial risk to them if they were placed directly in his custody, she stated he "has not completed the job process and doesn't have resources" and "does not have a home of his own at this time." She said he had been cooperative with the Department.
At the end of the dispositional hearing, counsel for the Department commented, "We have seen a great deal of cooperation on the part of the *1271 father. There has been no convincing or even a scintilla of evidence that the father is in any possible way a danger to these minors. [¶] In fact, it's quite the opposite. We have seen an incredible amount of patience and temperance under pressure during some difficult times, during these unfortunate proceedings."
In In re Jeannette S. (1979) 94 Cal. App.3d 52, 60-61 [156 Cal. Rptr. 262], the court held that, assuming the trial court had reasonably removed the child from her mother's home, it could have placed her with her father and the Christiansens, relatives with whom he was residing. "The fact that the home was small, that [father] was unemployed and that he had a drinking problem does not support a finding that it would be detrimental to Jeannette for her to be with her father and the Christiansens rather than the Department. The presence of Mrs. Christiansen in the home would have alleviated any concern arising from [father]'s alcoholism and arrest for child molesting 13 years earlier." Thus the only reasons advanced for failing to award custody to Durrett have been explicitly held insufficient.
In In re Jamie M. (1982) 134 Cal. App.3d 530, 537-542 [184 Cal. Rptr. 778], in the absence of any evidence of how the mother's mental illness would adversely affect her children, the court refused to hold her chronic schizophrenia detrimental per se. Here there was no evidence of how Durrett's lack of employment and a separate residence would adversely affect his daughters, and to hold these factors detrimental per se is unthinkable. In this regard, Durrett's eloquence is persuasive: "The issue presented by this appeal is very clearly drawn. Can a court lawfully deprive a parent who is able to provide good care, of the custody of his/her child simply because the parent is unemployed and shares a home with his/her parent? The negative answer urged by appellant is absolutely required unless this court decides to license social service to remove all children from the unemployed and from those who by choice or necessity share a home with a friend or relative. Such intrusiveness must not be tolerated by a free society."

IV
In this case we review by appeal a dispositional order of the juvenile court of May 19, 1988, upon which a motion for rehearing was denied on July 7, 1988. The appellants' opening briefs were not filed until April 25 and May 8, 1989. Pursuant to Welfare and Institutions Code sections 364 and 366 the juvenile court must conduct a further hearing to review the case no less than six months after the original dispositional hearing. Thus this case dramatically demonstrates how inadequate and inappropriate it is to review this case by appeal when at least one additional hearing has already occurred *1272 which may well have mooted the issue by a placement with the father, or by a termination of the dependency proceedings.
In a concurring opinion in In re Stephen L. (1984) 162 Cal. App.3d 257 [208 Cal. Rptr. 453], Justice Hanson persuasively presented the argument that dependency and minor delinquency determinations by the juvenile court should not be reviewable by appeal, which is time consuming and requires a written opinion by the court in every case, but by writ petition. Such a practice would provide speedier and more effective relief and would eliminate the mandatory requirement of a written opinion which the lengthy appeal process threatens with irrelevancy because a further hearing has already taken place which may well have mooted the issue.
Justice Hanson asked: "Does it make sense to burn up judicial time and effort rendering written opinions on every juvenile case? No! Can California's appellate procedures for reviewing juvenile cases be handled in a more cost effective and more expeditious manner? YES!" (In re Stephen L., supra, 162 Cal. App.3d at pp. 265-266.) We would add the additional question and answer: Does it make any sense in dependency proceedings to have a process of review which results in litigants obtaining relief too late to do them any good and also results in irrelevant and unnecesssary work being imposed on already overburdened appellate courts? No! If this case had been presented to us for review by writ petition rather than as an appeal, we could have provided the father and the children with much more immediate relief. For this reason we recommend that the Legislature provide for appellate review of dependency proceedings by writ petition rather than by appeal.
The judgment is reversed as to the dispositional order placing Danielle and Kiana in the custody of Gloria Johnson and the trial court is directed to conduct another dispositional hearing in accordance with the principles expressed herein. In all other respects, the judgment is affirmed.
Low, P.J., and Haning, J., concurred.
A petition for a rehearing was denied December 21, 1989.
NOTES
[*] Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication with the exception of parts I and II.
[1] At the time of trial, Welfare and Institutions Code section 300, subdivision (a), brought within the juvenile court's jurisdiction any person under the age of 18 "Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising care or control, or has no parent, guardian, or custodian actually exercising care or control." (Stats. 1986, ch. 1122, § 2.)
[*] See footnote, ante, page 1267.