[No. A062478. First Dist., Div. Five. Feb. 17, 1995.]

In re TANIA R. et al., Persons Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
AURA R., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

COUNSEL

Grayson & Topsfield and Violet Elizabeth Grayson for Defendant and
Appellant.

Kelvin H. Booty, Jr., County Counsel, and Larry Lee Litke, Deputy County
Counsel, for Plaintiff and Respondent.

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for
publication with the exception of parts I, II, III, and IV.

## Opinion

### KING, J.—

### Introduction

Aura R. appeals from a 12-month status review order which continued family reunification services and denied her request for immediate return of her children, Tania and Norman.

Tania (aged five) and Norman (ten months) were detained in protective custody in February 1992, pursuant to a petition alleging serious physical harm, failure to protect, and no provision for support (Welf. & Inst. Code, § 300, subds. (a), (b) & (g)).[1] In support of these allegations, the Alameda County Social Services Agency (the Agency) alleged Aura had repeatedly beaten the minors resulting in serious injury, she was then incarcerated for felony child abuse (Pen. Code, § 273a), she was homeless, and the identity and whereabouts of the minors' father(s) were unknown.

At the jurisdictional hearing, Aura submitted to the petition as amended.[2] The children were placed with their maternal aunt in Stockton. The court adopted a reunification plan requiring, among other things, that Aura meet regularly with a child welfare worker, visit her children regularly, complete a parent education program, maintain a stable, safe, and sanitary place of abode for the needs of the minors, refrain from physical punishment, and participate in counseling or therapy.

In a report prepared for the six-month status review, the Agency recommended continued dependency and out-of-home placement, six more months of reunification services, and modification of the plan to include a condition that Aura submit to a psychological evaluation and comply with any resulting treatment recommendations. The Agency noted Aura had so far "completely refused to submit" to such an evaluation. In an updated report, the Agency recommended that visitation be supervised, which the court then ordered. In October 1992, after further hearings, the court ordered a psychological evaluation over Aura's objection.

In a report prepared in January 1993 for the 12-month status review, the Agency noted Aura had been referred to a Spanish-speaking clinical psychologist but had failed to keep or reschedule her evaluation appointment.

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2] The amended petition alleged only Tania had been beaten but Norman was at risk for physical abuse (§ 300, subd. (j)), and Aura was then serving 45 days in jail for misdemeanor child endangerment (Pen. Code, § 273a).

For this and other reasons, the Agency recommended termination of reunification services, a selection and implementation hearing, (§ 366.26), and legal guardianship. Soon afterwards, Aura returned to therapy, submitted to a psychological evaluation, and resumed regular meetings with the child welfare worker and visits with her children. Accordingly, the Agency changed its recommendation to six more months of reunification services, rejecting Aura's request for immediate return of the children.

At the 12-month hearing, the Agency again recommended an additional 6 months of reunification services, and Aura renewed her request for immediate reunification. The trial court adopted the Agency's recommendations and denied Aura's request.[3] "At the review hearing held 12 months after the initial dispositional hearing, the court shall order the return of the minor to the physical custody of his or her parent or guardian unless, by a preponderance of the evidence, it finds that return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor. The [Agency] shall have the burden of establishing that detriment. . . . The failure of the parent or guardian to participate regularly in any court-ordered treatment programs shall constitute prima facie evidence that the return would be detrimental. In making its determination, the court shall review the [Agency]'s report and shall consider the efforts or progress, or both, demonstrated by the parent or guardian and the extent to which he or she cooperated and availed himself or herself of services provided. If the minor is not returned to a parent or guardian, the court shall specify the factual basis for its conclusion that the return would be detrimental." (§ 366.21, subd. (f).)

At the 12-month hearing on May 14, 1993, the trial court commended Aura for the recent improvement in her cooperation which had resulted in the Agency's changing its recommendation from legal guardianship to continued reunification services. The court went on to find that because Aura had not yet fully complied with the reunification plan, and had only recently resumed unsupervised visitation and consistent therapy, the children would

---

[3]Presumably because of a clerical error, the record includes documents pertaining to the 18-month status review as well. Aura refers to these documents in her opening brief, while consistently maintaining she has appealed only from the order following the 12-month review. In response, the Agency comments that Aura "treats this" as an appeal from both orders, and "stipulates" that this court may so treat it "in the interest of saving time and money for everybody." In her reply brief, Aura reiterates the fact that she appealed from the 12-month order, but "does not object" to treating this as an appeal from the 18-month order too. Neither party cites any authority for such "treatment," and since our independent research has not revealed any such authority, we decline the invitation to treat this appeal as also being from the 18-month order. As of September 16, 1994, the 12-month orders remained essentially in effect. A hearing on the Agency's section 388 motion (to change, modify, set aside order, or terminate jurisdiction) was scheduled for October 7.

be at risk if returned immediately. Because of numerous past continuances and counsel's vacation schedules, the 18-month hearing would take place in only 2 months. The trial court expected Aura's continued progress to result in reunification at that time. The court denied Aura's request for immediate reunification, ordered all existing orders to remain in effect, and set July 15 for the 18-month permanency planning hearing.

I-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V

We cannot conclude this opinion without noting that once again, as happens in every appeal from orders made at review hearings required to be held at six-month intervals in dependency cases,[5] by the time this opinion is issued subsequent juvenile court activity has taken place. Appeals cannot be concluded in less than a year.[6] Thus at least one subsequent juvenile court hearing will already have taken place before the appeal of the prior order can be decided. Quite frequently, before the appeal can be decided, a subsequent appeal of a later six-month review hearing is pending (as in this case), a section 366.26 hearing has occurred, or the juvenile court has terminated its jurisdiction and returned the children to the parents.

For this reason, appeal of six-month review hearings is expensive and wasteful, and is a frustrating experience for appellate courts. In such cases the cost of appellate court justices and staff as well as counsel and staff of the public agency is paid with taxpayer's dollars and, in most cases, so are the attorney fees and costs of appointed appellate counsel for the parents. This is a terrible waste of public resources. In this day of tight governmental budgets, why should precious public funds be spent for an appeal which cannot possibly be decided prior to subsequent judicial proceedings which will probably moot the appeal?

For more than 10 years California appellate courts have called upon the Legislature to provide for appellate review of juvenile hearings by writ rather than appeal. (See *In re Michelle M.* (1992) 8 Cal.App.4th 326 [10 Cal.Rptr.2d 64], *In re Tiffany Y.* (1990) 223 Cal.App.3d 298 [272 Cal.Rptr.

---

*See footnote, *ante*, page 447.

[5]Section 366.21 requires, if dependency jurisdiction is ongoing, that review hearings be held 6, 12 and 18 months after the initial dispositional hearing. In part V of this opinion the term "six-month review hearing" includes each of these three possible review hearings.

[6]For example, the order appealed from in this case was issued May 5, 1993, but counsel for appellant was not appointed until April 18, 1994, 11 months later. The case became fully briefed September 21, 1994, almost 18 months after the order was made.

733], *In re Danielle M.* (1989) 215 Cal.App.3d 1267 [266 Cal.Rptr. 352], and *In re Stephen L.* (1984) 162 Cal.App.3d 257 [208 Cal.Rptr. 453].) Careful review by writ petition would permit appellate courts to review juvenile court decisions in a timely fashion, prior to any subsequent juvenile court hearing. As an expedited proceeding, writ review would not only assure taxpayer dollars will be more prudently spent, it would reduce the cost of appellate review. It would also solve the problem, inherent in a review of six-month review orders by appeal, of overburdened appellate courts wasting their time determining issues made moot by the passage of time.

It appeared the Legislature was finally going to address this issue last year, and it did so with respect to permanent placement proceedings when it passed Senate Bill No. 1531 (Stats. 1994, ch. 1007, § 1). That legislation amended section 366.26 to provide that an order setting a hearing for permanent placement of the children is not appealable unless a specified writ procedure has previously been pursued.[7] However, this legislation did not consider the question of appellate review of six-month review hearings. If writ review is appropriate for a process which can lead to removal of children from their parents to permanent placement with others, usually by adoption, it certainly should be adequate for appellate review of six-month review hearings which merely assess the success of efforts to reunify children with parents.

We therefore call upon the Legislature to consider authorizing appellate review of six-month review hearings by writ petition, rather than appeal, in order to permit appellate courts to grant timely relief. The purpose of dependency proceedings, when possible, is to reunify neglected or abused children with their parents under juvenile court supervision utilizing review hearings at six-month intervals. This purpose will be fulfilled by meaningful and timely review of orders made at six-month review hearings by writ petition rather than by appeal. Additionally, appellate review by writ petition will result in a more prudent use of public funds.

The order is affirmed.

Peterson, P. J., and Haning, J., concurred.

---

[7]Pursuant to this legislative mandate the Judicial Council adopted California Rules of Court, rules 39.1B and 1436.5 and amended rules 39.1A, 39.2, 39.2A, 1435, 1436, 1456, 1460, 1461, and 1462 to specify procedures for appellate review of such orders.