Filed 2/14/22  P. v. Toro CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>IGNACIO TORO, JR.,<br><br>    Defendant and Appellant. | B309431<br>(Los Angeles County<br> Super. Ct. No. BA484922) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Garcia, Judge.  Affirmed.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Ignacio Toro, Jr., appeals from the judgment entered following the denial of his motion to suppress evidence (Pen. Code, § 1538.5),[1] and no contest plea to misdemeanor vandalism (§ 594, subd. (a)). He contends the trial court erred by denying his motion to suppress evidence obtained from a detention and patdown search he asserts were unlawful. We affirm.

## BACKGROUND

The District Attorney of the County of Los Angeles filed an information alleging that on or about January 28, 2020, defendant committed felony vandalism under $400 for the benefit of a criminal street gang, to wit, the Varrio Nuevo Estrada (VNE) gang.[2] (§§ 594, subd. (a), 186.22, subd. (d), 186.30, subd. (a).)

On February 11, 2020, defendant filed a motion under section 1538.5 to suppress the following pieces of evidence: (1) statements he had made to investigating officers; (2) evidence regarding the officer's "observations relating to graffiti"; and (3) evidence of a spray paint can and top that had been recovered at the scene. Defendant asserted the evidence resulted from an unlawful detention and patdown search. The

---

[1]    Subsequent references to statutes are to the Penal Code.

[2]    Vandalism causing less than $400 in damages is a misdemeanor. (§ 594, subds. (a), (b)(2)(A).) However, the gang allegation transforms it into a felony wobbler, punishable by one year in county jail or by imprisonment in state prison for one, two or three years. (§ 186.22, subd. (d), count 1.) The prosecution elected to file the vandalism charge as a felony.

2

prosecution opposed the motion and requested that the court deny it in its entirety.

At the March 2, 2020 hearing on defendant's motion, the prosecution called as witnesses Los Angeles Police Officers Keoni Smith and Ruben Zaragoza. Both officers testified that around 11:20 p.m. on January 28, 2020, they were inside a patrol car with another partner conducting crime suppression. As the car approached an intersection, the officers observed two individuals standing on the corner: defendant, who was seen wearing an "oversize shirt with oversize shorts," and an individual Officer Zaragoza recognized as a 14-year-old member of Varrio Nuevo Estrada, a criminal street gang also known as VNE.

"[A]lmost simultaneously" after observing both individuals, Officer Smith saw "black gang graffiti directly behind them" on two separate walls. The first piece of graffiti was on the wall of a local market, and stated "ESVN." The second piece of graffiti, appearing on a door to another business, stated "V and E." According to Officer Smith, "ESVN" stands for Eastside Varrio Nuevo Estrada, and "V and E" stands for Varrio Nuevo Estrada. The officers also located a third piece of graffiti ("VNE Block") appearing on a white building across the street from where defendant was standing.

The officers decided to stop both individuals for a possible curfew violation under Los Angeles Municipal Code section 45.03.[3] The patrol

---

[3] Section 45.03(a) of the Los Angeles Municipal Code generally provides that no minor under the age of 18 years may be present in or upon any public street, curb area, public place or building after 10:00 p.m. Before an officer may take action to enforce the curfew ordinance, section 45.03(c) mandates

3

vehicle stopped, and Officers Smith and Zaragoza got out of the vehicle and told defendant and his associate to stop and face the wall.

Officer Smith approached defendant and secured his hands behind his back. Officer Smith then decided to patdown defendant, as she and her partner "were in a heavy gang location, speaking with a known gang member who was wearing clothing [that could easily] conceal weapons." From her experience as a gang detail officer, Officer Smith understood that in a tandem of individuals who spray painted gang graffiti, "one of them, or both of them [could be] carrying a weapon."

Officer Smith told defendant to spread his legs. When he complied, Officer Smith observed a lid to a spray paint can in his right pocket. Officer Smith then patted defendant down and located an aerosol spray can with black paint. When handcuffing defendant, Officer Smith noticed black paint on his hands. The color matched the gang graffiti, which Officer Smith believed was fresh given the smell emanating from the walls and the "tacky" feel of the paint.

Defendant told the officers he was not a juvenile. He did, however, speak about his membership in VNE, and admitted to putting up the "VNE Block" graffiti across the street.

Following the officers' testimony and argument by counsel, the court denied defendant's motion to suppress. Months later, defendant entered a plea of no contest to an amended count of misdemeanor vandalism. As part of the plea agreement, defendant agreed to

___

that the officer asks the apparent offender's age and reason for being in the public place during curfew hours.

4

summary probation for two years (a term later reduced to one year in light of Assembly Bill No. 1950). The court accepted the plea, dismissed the gang allegation, suspended imposition of sentence, and placed defendant on summary probation.

Defendant timely appealed from the judgment of conviction following his plea of no contest. (See § 1538.5.)

## DISCUSSION

Defendant contends the trial court erred by denying his motion to suppress evidence that had been discovered during and after his detention and patdown search. As we shall discuss, we discern no error in the trial court's ruling.

A.  *Governing Law and Standard of Review*

Under section 1538.5, subdivision (a), a defendant may move to suppress evidence gathered in violation of the state or federal Constitution. The United States and California Constitutions bar the exclusion of evidence obtained as a result of an unreasonable search or seizure. (See U.S. Const., 4th & 14th Amends.; Cal. Const., art. I, § 13; *People v. Camacho* (2000) 23 Cal.4th 824, 830.)

When reviewing a ruling on an unsuccessful motion to suppress evidence, we defer to the trial court's express and implied factual findings, upholding them if they are supported by substantial evidence; we then independently exercise our independent judgment in determining the legality of a search or seizure on the facts so found. (*People v. Tully* (2012) 54 Cal.4th 952, 979 (*Tully*); *People v. Lomax*

5

(2010) 49 Cal.4th 530, 563 (*Lomax*).)  We also examine "the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling. [Citations.]"  (*People v. Dimitrov* (1995) 33 Cal.App.4th 18, 27.)

B.    *The Detention*

Defendant contends that he was illegally detained and that all of the evidence obtained from the detention should have been suppressed. Defendant is mistaken.

"It is settled that circumstances short of probable cause to make an arrest may justify a police officer stopping and briefly detaining a person for questioning or other limited investigation."  (*In re Tony C.* (1978) 21 Cal.3d 888, 892 (*Tony C.*), citing *Terry v. Ohio* (1968) 392 U.S. 1, 22 (*Terry*).)  "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'  [Citation.]  The standard takes into account 'the totality of the circumstances—the whole picture.' [Citation.]  Although a mere '"hunch"' does not create reasonable suspicion [citation], the level of suspicion the standard requires is . . . 'obviously less' than is necessary for probable cause."  (*Navarette v. California* (2014) 572 U.S. 393, 397.)  This standard necessarily precludes a "divide-and-conquer analysis."  (*U.S. v. Arvizu* (2002) 534 U.S. 266, 274 (*Arvizu*).)

"[T]o justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has

6

taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question." (*Tony C.*, *supra*, 21 Cal.3d at p. 893.) "'If there is a legitimate reason for the stop, the subjective motivation of the officer is irrelevant.'" (*Tully*, *supra*, 54 Cal.4th at p. 980, quoting *Lomax*, *supra*, 49 Cal.4th at p. 564.)

Here, the parties do not dispute that before detaining defendant and his associate, the officers had observed the following: (1) defendant was standing on a public sidewalk next to an individual known to be a juvenile at 11:20 p.m. at night; (2) both individuals were in an area known for heightened gang activity; (3) the individual standing next to defendant was a known member of VNE; and (4) both individuals were standing near gang graffiti specifically identifying VNE.

In light of these facts, defendant appears to concede that that his initial detention was lawful insofar as the officers were motivated by a possible curfew violation. He asserts however that his detention became unlawful when the officers continued to detain him without ascertaining his age.

Defendant's argument would have us ignore the totality of the evidence by focusing on the subjective motivation of the investigating officers. Such a "divide-and-conquer analysis" is not the standard for determining whether his detention was reasonable. (See *Tully*, *supra*,

7

54 Cal.4th at p. 980; *Lomax, supra,* 49 Cal.4th at p. 564; *Arvizu, supra,* 534 U.S. at p. 274.)

The totality of facts known or apparent to the officers amply supported their detention of defendant and his associate to investigate gang vandalism. In this regard, *In re Stephen L.* (1984) 162 Cal.App.3d 257 (*Stephen L.*) is instructive. In that case, investigating officers located the defendant and a group of individuals standing in close proximity to a wall with "'freshly painted gang type graffiti.'" (*Id.* at p. 259.) Several individuals in the group, and not the defendant, were recognized as members of the gang that had been identified in the graffiti. (*Ibid.*) The officers detained the group, and upon a patdown search of defendant, recovered a folding knife from his belt, which had been covered by the defendant's shirt and jacket. (*Ibid.*)

As in this case, the defendant in *Stephen L.* contended on appeal that he was illegally detained and subjected to an unlawful patdown search. (162 Cal.App.3d at p. 260.) Rejecting both contentions, the court of appeal was "mystified, after a recital of the foregoing facts, just what improvement in conduct we are being urged to require of police officers in a situation such as here presented. . . . [¶] . . . The record abounds with the required articulable facts for a detention." (*Id.* at pp. 260–261.)

Defendant concedes in this case that under *Stephen L.,* "standing next to a wall with graffiti can support the existence of reasonable suspicion" to detain a person for possible vandalism. To distinguish this case from *Stephen L.,* defendant asserts he was not stopped

"directly" in front of the gang graffiti, and was instead a "reasonable distance away from the graffiti." In support of such argument, defendant has consistently referred to dashcam footage from the officers' patrol vehicle. But that footage does not appear to have been admitted into evidence in the trial court.[4] "Matters not presented by the record cannot, of course, be considered on the suggestion of counsel in briefs or in affidavits attached thereto." (*People v. Szeto* (1981) 29 Cal.3d 20, 35.)

The fact remains that defendant was seen in an area from which Officer Smith could "almost simultaneously" see various pieces of fresh gang graffiti referencing the very same gang in which defendant's

---

[4]     At the motion to suppress hearing, the reporter's transcript reflects that portions of the video were played by defense counsel during the cross-examination of Office Smith. Defense counsel marked the dashcam footage as an exhibit ("Defense Exhibit A") but did not request that it be introduced it into evidence. At the change of plea hearing months later, defense counsel requested "to introduce the exhibit . . . into the court file from the 1538.5 motion" for "housekeeping" purposes. It does not appear that the court ruled on the request to admit the footage into evidence during either hearing.

On September 13, 2021, counsel for defendant filed a request in the superior court to transfer "Defense Exhibit A from the . . . motion to suppress hearing, which was admitted into evidence at [his] change of plea hearing." In response, on October 25, 2021, the clerk of court filed a certificate with this court in which she declared that the exhibit could not be located in the court file, courtroom, or clerk's office.

This court has independently procured from the clerk of the superior court and viewed Defense Exhibit A. Whatever meaning one gives to the phrase "directly behind them on the walls," the video footage confirms Officer Smith's observation that defendant and his cohort were seen standing in front of, and then walking away from, gang graffiti (which we note is considerable in size).

associate was a member. Defendant has cited no authority, and we are aware of none, in which the reasonableness of a detention was exclusively determined by an individual's proximity to graffiti or other vandalism. As we have discussed, defendant's proximity to fresh graffiti was but one fact among the totality of facts known or apparent to the officers from which they could detain defendant for vandalism.

C.    *The Patdown*

Defendant also contends that his patdown search was not supported by reasonable suspicion. We disagree.

Under *Terry*, a police officer is authorized to conduct "a reasonable search for weapons for the protection of the . . . officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (*Terry, supra,* 392 U.S. at p. 27.)

We again draw guidance from *Stephen L.* As discussed, the officers in *Stephen L.* detained and patted down a group of individuals suspected of gang vandalism. (162 Cal.App.3d at p. 260.) An officer testified he had patted down the group for "safety purposes" because the

officers were outnumbered, and "street gang members have been known in the past to carry weapons." (*Ibid.*) Finding the patdown search of the defendant reasonable, the court relied on the officer's testimony, and noted that the group was in an area known for gang activity and weapon usage. (*Id.* at pp. 259, 260.)

The circumstances present in *Stephen L.* are also present in this case. The officers in this case, though not outnumbered, were concerned for their safety due in part to detaining a known gang member in an area known for heightened gang activity. From prior experience, Officer Smith suspected that at least one of the individuals detained for gang graffiti would be carrying a weapon. (See *In re H.M.* (2008) 167 Cal.App.4th 136, 146 ["[o]fficers in an area plagued by violent gang activity need not ignore the reality that persons who commit crimes there are likely to be armed"].)

In addition to the foregoing, the fact that defendant was wearing oversized clothing large enough to conceal a weapon was enough to justify a patdown search. (See *People v. Collier* (2008) 166 Cal.App.4th 1374, 1377, fn. 1 ["the wearing of baggy clothing, coupled with other suspicious circumstances, . . . furnishes the requisite facts to support a patdown for weapons so that the [investigation] could be safely performed"]; *People v. Lopez* (2004) 119 Cal.App.4th 132, 137 ["loose, baggy" clothes capable of concealing a weapon properly considered as one factor supporting decision to conduct patdown search].)

*People v. Dickey* (1994) 21 Cal.App.4th 952, on which defendant relies is inapposite. In that case, the court held that a patdown search

11

of a motorist was not justified in light of the facts that the motorist had no identification, exercised his Fourth Amendment right and refused to allow the deputy to search his vehicle, was nervous and sweating, and had baking powder in a film canister that he used to brush his teeth. (*Id.* at pp. 954–955.) The court stated that none of these considerations, considered singly or in combination, would lead an officer to reasonably believe the defendant was armed and could use the weapon against him. (*Id.* at p. 956.)

Defendant's situation is readily distinguishable. The circumstances in this case, particularly activity by a known gang member in a location known for gang activity, "more than warranted the cursory search." (*Stephen L.*, *supra*, 162 Cal.App.3d at p. 261; see *id.* at p. 260 ["Failure to cursorily search suspects for weapons . . . in an area where gang activity and weapon usage is known from the officers' past experience would be most careless"].)

In sum, we conclude under the totality of the circumstances that the officers' actions in detaining defendant and patting him down were reasonable. Thus, the court properly denied defendant's motion to suppress.[5]

//
//
//
//

---

[5] In light of our conclusion, we do not consider defendant's contention that the denial of his motion constituted prejudicial error.

12

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

13