[No. H005756. Sixth Dist. Aug. 30, 1990.]

In re TIFFANY Y., A Person Coming Under the Juvenile Court Law.
PEDRO SILVA, as Chief Probation Officer, etc., Plaintiff and Respondent, v.
EILEEN Y., Defendant and Appellant.

COUNSEL

S. Clay Bedford and Manuel J. Baglanis, under appointments by the Court of Appeal, for Defendant and Appellant.

Steven M. Woodside, County Counsel, and Donald J. Fallon, Deputy County Counsel, for Plaintiff and Respondent.

Leo Himmelsbach, District Attorney, and Robert J. Masterson, Deputy District Attorney, for Minor.

## Opinion

**ELIA, J.**—We publish this troubling and tragic case, as the First Appellate District published *In re Danielle M.* (1989) 215 Cal.App.3d 1267 [264 Cal.Rptr. 247], to illustrate the practical futility of the present procedure for appellate review in juvenile dependency cases, and to underline the fragility of the interests such appeals are designed to protect. One distinguished jurist in this district has already spoken eloquently on this subject. (Cf. *In re Micah S.* (1988) 198 Cal.App.3d 557 [243 Cal.Rptr. 756] [Brauer, J., conc.].) The lesson bears repeating, however.

On the merits of this appeal, we are asked to invalidate a trial court finding underlying a dispositional order in a juvenile dependency case. Despite the invalidity of the challenged finding, we will affirm the dispositional order.

### Factual and Procedural Background

Tiffany Y. was born on January 9, 1989, the child of appellant Eileen Y. and Alvia Y., who is not a party to this appeal. She was placed in protective custody on the day of her birth.

The background of this precipitous placement is as follows: Appellant is the mother of three daughters; Joanna, Stacy, and Tiffany Y. On November 14, 1987, Joanna, who was then about four years old, was placed in protective custody when Stacy, then four months old, was found dead after having been sexually molested. The children's father, Alvia Y., who had been caring for both children at the time of Stacy's death, was arrested and charged with the homicide. His appeal of a subsequent conviction is now pending before this court. Joanna was released to appellant's custody on November 24, 1987. On February 29, 1988, the criminal charges against Alvia Y. were dismissed.

Alvia Y. was released on bail on a new complaint on April 4, 1988, and on April 6, 1988, Joanna was again placed in protective custody. On May 9, 1988, a Welfare and Institutions Code[1] section 300, subdivision (d) petition was sustained as to Joanna. This petition, in substance, alleged that Joanna

---

[1] All further section references are to the Welfare and Institutions Code unless otherwise noted.

had been sexually molested by Alvia Y. and that appellant had denied both the molestation and any possible culpability on the part of Alvia Y.

In November 1988, Joanna was adjudicated a dependent of the court and continued in out-of-home placement.[2] Tiffany was born two months later.

On January 11, 1989, a petition was filed alleging that under section 300, subdivisions (b), (d), and (j), Tiffany should be adjudged a dependent of the court.

An ex parte detention order was filed on January 12, 1989, and a detention hearing was held the following day. An amended petition was filed on January 20, 1989.

The amended petition alleged as grounds for jurisdiction under section 300, subdivision (b) that Tiffany was at a "substantial risk of serious physical and emotional harm" due to the inability of her parents to adequately supervise and protect her on the grounds that her sister, Stacy Y., was "found dead in the family home with fresh evidence of trauma to the genital area after the alleged natural father had been taking care of [her] for several hours during the mother's absence," that the mother had denied the molestation of another sibling, Joanna Y., and that no reasonable explanation existed for the siblings' injuries.

As grounds for jurisdiction under section 300, subdivision (d), the amended petition, as sustained, alleged a substantial risk of sexual abuse in that Joanna Y. "states and believes that she was molested by her alleged natural father" and that Joanna "has stated that she told said minor's natural mother about the molestation but the mother failed to protect the minor's sibling . . . ."

As grounds for jurisdiction under section 300, subdivision (j), the amended petition alleged the fact of Joanna's dependency, which in turn was based on Stacy's death, on Joanna's allegations of sexual molestation by her father, and on appellant's denial of this molestation.

A contested jurisdictional hearing was held over 12 court days commencing on January 23, 1989, and ending on February 27, 1989. Alvia Y. was still out of custody on bail at the commencement of this hearing.

---

[2] Alvia's appeal of Joanna's dependency was recently affirmed by this court (H005335, filed May 10, 1990).

Both jurisdictional and dispositional orders were made on February 28, 1989, following the completion of this hearing. Appellant timely appealed from the dispositional order.

## DISCUSSION

### I

■ Appellant argues that the trial court made an erroneous finding at the dispositional hearing which mandates reversal. Her argument pertains only to that part of the petition which alleged jurisdiction existed over Tiffany under section 300, subdivision (d). This part of the petition, as amended, read "further, said minor's sibling, Joanna Y[.] has stated that she told said minor's mother about the molestation but the mother failed to protect the minor's sibling." Appellant argues that the record is devoid of evidence that Joanna ever told appellant that she was being molested, and that it is unclear the court would have continued Tiffany's out-of-home placement if this finding were stricken. We agree that the finding regarding Joanna is unsupported by record evidence; we disagree that the placement order must be reversed as a result.

The record evidence to which respondent points in support of this finding is as follows: Appellant's therapist, Judy Collins-Wolfe, testified that "last Thursday," in a conjoint therapy session with Joanna and her therapist, Joanna had told her mother that she had been molested by her father. Appellant also testified that "My daughter told me she's molested by her father, and I believe my daughter." This entire scenario, however, happened postmolestation. Respondent has not cited, and we have not found, any evidence which would justify the conclusion that Joanna told appellant, prior to Tiffany's birth, that she had been sexually molested by her father.

The question then becomes what effect this conclusion has on the dispositional placement order. ■ We first note, however, that only in her reply brief does appellant assert there is insufficient evidence to sustain the placement decision. "The general rule is that points raised in a reply brief for the first time will not be considered unless good cause is shown for the failure to present them before." (*Kimberly M.* v. *Los Angeles Unified School Dist.* (1989) 215 Cal.App.3d 545, 548 at fn. 3 [263 Cal.Rptr. 612]; *Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 616 [262 Cal.Rptr. 842]; *Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1009-1010 [197 Cal.Rptr. 250].) The difference in focus between the opening and reply

briefs is unexplained here. We will nonetheless review the sufficiency of the evidence in light of our conclusion that the challenged finding cannot stand.

 On this issue, we conclude there was ample evidence substantiating the trial court's finding that appellant had failed to protect Joanna and, by inference, that she might similarly fail to protect Tiffany from sexual abuse by their father. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal.Rptr. 637, 623 P.2d 198]; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16 [265 Cal.Rptr. 650].) The salient evidence in this inquiry concerned appellant's continuing emotional dependence on Alvia Y., and her failure to believe his role in Stacy's death.

Appellant's therapist testified that appellant was still emotionally dependent on Alvia Y., and that she was 50 percent attached to him as of the date of her testimony. Testimony was also adduced that appellant still saw Alvia Y. at their common workplace, although they worked different shifts, and that she had met him in the county law library preceding the jurisdictional hearing. And although appellant acknowledged the truth of Joanna's accusations against her father, she testified that she didn't know if Alvia did something to Stacy.

The trial court correctly identified the crux of the placement issue as whether appellant could protect Tiffany. On this issue, it concluded she could not. In support of this conclusion, the court cited appellant's denial of Alvia's possible culpability in Stacy's death, the degree of appellant's current attachment to Alvia, appellant's therapist's testimony that "the potential here for recurrent molest is great" if Tiffany were returned to her mother, its disbelief that appellant's and Alvia's meeting in the law library had been a chance occurrence, and the testimony of the psychologist who had evaluated appellant that "so long as there remains an emotional involvement the mother would be unable to protect the child." This evidence is more than ample to support the trial court's dispositional order maintaining Tiffany in out-of-home custody. (*In re Steve W., supra*, 217 Cal.App.3d at pp. 15-16.)

We are not without sympathy for the enormity of the loss confronting appellant. One of her children is dead; the other two are in foster care. Tiffany was taken into protective custody within hours of her birth and has never lived with appellant. In addition, appellant has had to deal with the recognition that her husband and the father of her children was responsible for molesting two of them, and may have killed one. While we agree that the findings were improper in one respect, we cannot fault the trial court for

concluding on the basis of the evidence before it that Tiffany might not be safe from her father while in appellant's care.

## II

A far more troubling problem, however, is the length of time which has elapsed between the order appealed from, and this court's review of that order. The dispositional order in this case was made on February 28, 1989. Appellant filed a timely notice of appeal on April 28, 1989. It was not until six months later that appellant's opening brief was filed. An additional seven months elapsed until the appellant's reply brief was filed and this case was finally ready for our consideration. This appellate district takes seriously the statutory mandate that gives priority to juvenile dependency appeals (section 395; Cal. Rules of Court, rule 39(e)), and takes pride in the expeditious manner in which we review them. We can do nothing, however, until the record is filed and the case is fully briefed: This difficult and bitterly contested case, heard over 12 court days, resulted in an appellate record containing approximately 1,500 pages of transcript.

When this case was heard before the trial court 18 months ago, Tiffany was less than 2 months old. Eighteen months is a considerable time in the life of a young child. (Cf. Goldstein et al., Beyond the Best Interests of the Child (2d ed. 1979), quoted in *In re Micah S.*, *supra*, 198 Cal.App.3d at p. 566.) In the interim, as Justice King pointed out in *In re Danielle M.*, *supra*, 215 Cal.App.3d at page 1271, the juvenile law mandates further hearings at no more than six-month intervals. It appears from the juvenile court file[3] that reunification efforts have failed; Joanna and Tiffany have been placed in a foster-adoptive home. In the 18 months since the dispositional order, in other words, the case has moved from possible reunification to possible termination.

This chronology dramatically illustrates the present futility of appellate review; in any practical, if not technical sense, the issues raised as to the dispositional order are now moot. No matter what errors may have infected the early stages of a dependency proceeding, the direction of the outcome is clearly foreshadowed by the time we review the appeal, and any relief we could offer would come too late. (*In re Danielle M.*, *supra*, 215 Cal.App.3d at p. 1272.) While, as Justice Brauer pointed out in *In re Micah S.*, "diagnosis does not guarantee a cure," (198 Cal.App.3d at p. 567), we join the First Appellate District in urging the Legislature to consider an alternative pro-

---

[3] We take judicial notice, on our own motion, of the juvenile court file in this case.

cedure for appellate review of dependency appeals which would allow relief, when appropriate, to be granted in a timely fashion.

The trial court's order is affirmed.

Capaccioli, Acting P. J., and Cottle, J., concurred.

A petition for a rehearing was denied September 27, 1990, and appellant's petition for review by the Supreme Court was denied November 15, 1990.