[Crim. No. 26683. Second Dist., Div. Two. Aug. 26, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ALLEN, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Lawrence P. Scherb II and Joyce Luther, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—Defendant appeals a judgment of conviction of burglary in the second degree entered after a jury verdict. The trial court found that defendant had suffered four prior felony convictions.

### FACTS

On September 26, 1974, at 2:35 a.m., a Santa Barbara police officer observed defendant walking about a darkened used car lot. Believing that the presence of the defendant at the place and hour was unusual the officer decided to investigate. As he approached the defendant, and before parking the patrol car in an adjacent lot, the officer observed that the defendant hesitated, taking "kind of a stutter step," when he became aware of the approaching vehicle.

The officer alighted from his vehicle, approached the defendant and asked him for identification. Defendant identified himself as Michael Allen, and produced what was apparently a California identification card issued by the Department of Motor Vehicles. The name "Allen" struck a familiar chord with the officer since he knew that a number of persons named Allen had recently been arrested for burglary. He was, however, not certain that Michael Allen, the defendant, was one of those persons.

The officer asked Allen what he was doing in the area. Allen answered that he had been visiting a friend and was on his way back to the Travelers Hotel. The officer observed, however, that rather than walking toward the hotel the defendant was walking away from it. In response to a question defendant admitted that he had been released from prison just three weeks earlier. Coupling this information with the defendant's presence in the car lot the officer suspicioned that something illegal might be taking place.

At about this time the officer noticed that the defendant's pockets appeared to be bulging. Believing that the defendant might be carrying some kind of a weapon the officer patted down the outer surfaces of defendant's shirt and heavy levis. He felt a hard object in defendant's left front pants pocket which he was unable to identify. Thinking that it might be a weapon he pulled it out and saw that it was a set of three car keys solidly taped together.

The word "Dodge" was written on the tape indicating to the officer that the keys might belong to a car on the lot. There was in fact a Dodge

automobile sitting on the lot. The officer continued the "pat down" and found eight more sets of car keys, each set taped together. He then arrested defendant on suspicion of burglary.

On a previous trip by the car lot some 30 minutes earlier the officer had observed that the premises were intact. Since the area was a high crime area he repeated his visit to the scene at which time he discovered the defendant. After the arrest of defendant another officer appeared at the scene and the two officers then checked the used car lot. They discovered a broken office window, an open desk drawer and a number of keys laying about in disarray. Defendant told the officers that someone had given him the keys and that the police would be unable to find his fingerprints anywhere. The keys were later identified by the owner of the used car lot as belonging to the cars on the lot.

At trial the defendant testified that he had hitchhiked to Santa Barbara from his home in Santa Maria on September 25th in order to meet a court appearance the next morning. His ride had let him off near the used car lot. On his way to the Virginia Hotel defendant stopped at the rear of the used car lot to urinate. As he was relieving himself, he looked down at the ground and saw numerous keys scattered about. He picked them up intending to give them to his attorney later that morning. Shortly thereafter he was accosted by the officer. He admitted that he lied to the officer concerning the manner in which he acquired the keys.

## CONTENTIONS ON APPEAL

Defendant contends that he was unlawfully detained and searched and that the evidence obtained thereby, i.e., the car keys, should have been suppressed. He also challenges the validity of one of the prior convictions.

## THE DETENTION

■ A police officer has the right to temporarily detain and question an individual on the street where the officer has a reasonable suspicion that some activity out of the ordinary is taking place, and there is some indication that the person detained is connected with the unusual activity and there is some suggestion that the activity is related to crime. (*People* v. *Henze*, 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545]; *People* v. *Juarez*, 35 Cal.App.3d 631 [110 Cal.Rptr. 865]; *People* v. *Superior Court (Acosta)*, 20 Cal.App.3d 1085 [98 Cal.Rptr. 161].) The question of the reasonable-

ness of the officer's conduct is determined on the basis of all the information and knowledge possessed by that officer at the time the decision to detain is made. *(People* v. *Superior Court (English)* 266 Cal.App.2d 685 [72 Cal.Rptr. 261], cited in *People* v. *Gale,* 9 Cal.3d 788, at p. 795 [108 Cal.Rptr. 852, 511 P.2d 1204].)

■ Although the test is whether under the circumstances it would appear to a reasonable man in the position of the officer that a temporary detention was necessary in the proper discharge of his duties, *(People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Anthony,* 7 Cal.App.3d 751 [86 Cal.Rptr. 767]) an experienced police officer develops a certain expertise and unique ability to perceive the unusual and suspicious. *(People* v. *Cowman,* 223 Cal.App.2d 109, 117-118 [35 Cal.Rptr. 528].) The detention may not be based upon a "mere hunch" but if in light of the officer's experience or expertise the suspicion is a reasonable one, the detention is permissible. *(People* v. *Gravatt,* 22 Cal.App.3d 133 [99 Cal.Rptr. 287].)

■ In the instant case the officer was patrolling in a high crime area. He saw the defendant at a late and unusual hour exiting from darkened private property (see *People* v. *Rosenfeld,* 16 Cal.App.3d 619 [94 Cal.Rptr. 380]) where valuable merchandise was located. The officer observed that, because of the presence of various barriers, traversing the car lot was necessarily more difficult than using the regular sidewalk.

Defendant's answers to the officer's questions justified further detention. The information that the defendant had recently been released from Chino together with the officer's knowledge that the name "Allen" was connected with recent burglaries justified a reasonable suspicion that the defendant was connected with criminal activity on the darkened parking lot. Further the fact that defendant was trespassing on private property was justification for, at least, prolonging the detention.

■ When the officer observed bulges in the clothing of the defendant and considering that he was alone at 2:30 in the morning with a recently released convict, he acted reasonably in patting down the defendant to ascertain that the person before him was not armed.

■ It is well established that when an officer has reason to believe that his suspect is armed and dangerous he may conduct a superficial weapon search. *(Adams* v. *Williams,* 407 U.S. 143, 145 [32 L.Ed.2d 612, 616-617, 92 S.Ct. 1921]; *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88

S.Ct. 1868]; *People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].)

The officer need not be absolutely certain that the individual is armed. The issue is whether a reasonably prudent man under the circumstances would be warranted in his belief that his safety or that of others was in danger. (*Sibron* v. *New York,* 392 U.S. 40, 65 [20 L.Ed.2d 917, 936, 88 S.Ct. 1889], cited in *People* v. *Mosher,* 1 Cal.3d 379, at 394 [82 Cal.Rptr. 379, 461 P.2d 659].) Any hard object which feels like a weapon may be removed from pockets of clothing. (*Mosher, supra.*) ▪ In the instant case the heavy levis worn by the defendant made it difficult for the officer to feel the outline of the hard object and prevented him from immediately determining what it actually was. However, a set of keys taped together could well give the feel of an object that could be used for assault. The officer's belief was therefore reasonable and he was justified in withdrawing the keys.

## The Prior Convictions

▪ Defendant maintains that the prosecution failed to prove the constitutional validity of one of the alleged priors which was used to impeach him, a conviction for petty theft with a prior petty theft.

The prior was established by introduction of a certified minute order showing that defendant had pleaded guilty to the charge of petty theft with a prior conviction of petty theft. The record showed that at the time of that plea defendant was represented by counsel and was fully advised of his constitutional rights. This plea admitted the validity of the prior conviction as well as guilt of the substantive offense. He cannot now raise the issue of the validity of the prior petty theft conviction embraced in the charge to which he pleaded guilty. (*In re Yurko,* 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 516].)

A defendant seeking to challenge a prior conviction may do so only through a clear allegation that he was neither represented by counsel nor waived the right to be so represented. (*People* v. *Coffey,* 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15].) In the instant case the defendant merely asserts that by admitting the prior misdemeanor he did not admit the

constitutional validity thereof. He does not clearly allege lack of counsel or waiver.

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.