### Richmond

## HAROLD LANSDOWN

### V.

## COMMONWEALTH OF VIRGINIA

October 14, 1983.

Record No. 822157.

Present: All the Justices.

*John F. Lanham; Nikolas E. Parthemos (Hall, Monahan, En-gle, Mahan & Mitchell,* on briefs), for appellant.

*Elizabeth J. Stewart, Assistant Attorney General (Gerald L. Baliles, Attorney Gereral,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

Convicted by a jury of two counts of robbery and two counts of use of a firearm in the commission of robbery, the defendant, Har-

old Lansdown, seeks reversal of his convictions on the grounds the trial court erred in denying a motion to suppress evidence and in granting certain instructions. Finding no error in either respect, we will affirm the convictions.

The evidence shows that around 5:40 a.m. on January 29, 1981, two masked men robbed Ronald and Nancy Evans in their home at Lenah in Loudoun County. Among other things, the robbers took Ronald Evans' Gulf credit card and a string of rosary beads belonging to Nancy Evans.

About 7:30 p.m. on the same date, Officer Stephen Missouri of the Arlington County Police Department observed a van speeding through an Arlington intersection. Activating his red light and siren, Missouri attempted to stop the van. In an apparent effort by its driver to evade arrest, the van sped away, prompting Missouri to radio for assistance. With Missouri in pursuit, the van exceeded 80 m.p.h., changed lanes, and forced other motorists off the road, "almost striking several." The van ultimately came to a halt in an unlit area.

With his service revolver drawn, Missouri approached the van, which had "no rear windows or side windows." He ordered the occupants from the vehicle, and three male subjects exited. The defendant was one of the three, but was not the driver.[1] Although the defendant gave Missouri his correct name, he and his companions could produce no personal identification and no registration for the van.

Within two or three minutes, Officer Richard Alt arrived on the scene in response to Missouri's call for assistance. Missouri ordered the three subjects to place their hands on the van, and while Missouri stood guard, Alt proceeded to "pat [them] down."

As Alt was "patting . . . down" the defendant, who was wearing a leather jacket, the officer felt a hard object in a shirt pocket. Alt reached under the defendant's jacket into the shirt pocket and removed what turned out to be a rectangular brass box. With the same motion, Alt inadvertently pulled from the pocket a Gulf credit card and a string of rosary beads.[2] The credit card had been issued to Ronald Evans.

---

[1] The driver was charged with seven traffic infractions, including reckless driving, speeding, and "eluding."

[2] At trial, Nancy Evans identified the rosary beads recovered from the defendant as the same beads that were stolen from her in the robbery at her home.

When asked where he got the credit card, the defendant said he found it in the back of the van. According to the testimony of Alt, he then placed the defendant under arrest for possession of a stolen credit card and proceeded to conduct a search of the defendant's person. Missouri testified, however, that Alt arrested the defendant after the search. In any event, the search produced several items of jewelry, some of which had been stolen in the robbery at the Evans' home earlier in the day.

After the defendant was arrested, he was asked again where he got the credit card. This time, he replied that he had found it at a gas station in Washington, D.C., and that he intended to return it to its owner. The defendant was then taken to the police station and advised of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). In subsequent interviews with Officer Missouri, the defendant stated diversely that he found the credit card in the back of the van, that he found it at a filling station, and that he received it in exchange for marijuana.

Officer Missouri's investigation of the credit card theft ultimately led him to Mr. and Mrs. Evans and to consultation with Loudoun County authorities. On March 23, 1981, two Loudoun officers journeyed to the Arlington County Police Department. The defendant was brought from jail and placed in an interview room, where he was met by Officer Missouri and Arlington Detective James Hensley. The detective read the defendant the *Miranda* rights, and the defendant signed a form containing the rights and stating that he understood them. The defendant also signed a form waiving his right to counsel and reciting that he was willing to make a statement and to answer questions.

Missouri first questioned the defendant concerning a number of unrelated Arlington offenses and then interrogated him about the Evans robbery. Within two to seven minutes of the time the defendant was given the *Miranda* warnings, Missouri left the room and the two Loudoun officers entered. They proceeded to question the defendant about the items discovered on his person when arrested in Arlington. He said that he had found the credit card at a gas station, that the rosary beads belonged to his sister, and that the jewelry was his girlfriend's property.

## I.   Suppression of Physical Evidence

In a pretrial motion, the defendant sought to suppress the credit card, rosary beads, and jewelry. The trial court denied the

motion. The court held that the circumstances existing on the night in question justified the belief that the defendant was engaged in "possibly criminal behavior" and warranted concern by the police officers for their safety. It was proper, therefore, the court said, to order the defendant from the van and to frisk him for weapons. The credit card and rosary beads, the court stated, were discovered inadvertently in the frisk for weapons and, hence, were admissible. With respect to the jewelry, the court found it was lawfully seized in a search incident to arrest and, for this reason, was admissible.

The defendant contends the trial court erred in refusing to suppress the items in dispute. He argues that, as a mere passenger in a vehicle whose driver was charged only with traffic infractions, he was not subject to either detention or search. Thus, he concludes, the items were products of an illegal detention, search, and seizure and should have been excluded from evidence.

The defendant submits that his case is controlled by *Terry* v. *Ohio,* 392 U.S. 1 (1968), and Va. Code § 19.2-83. In *Terry,* the Court considered the narrow question "whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for an arrest." 392 U.S. at 15. Resolving this question, the Court recognized the general principle that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22.

Particularizing, the Court stated that where a police officer observes unusual conduct which reasonably leads him to conclude, in light of his experience, that "criminal activity may be afoot" and that the suspect "may be armed and presently dangerous," the officer may after identifying himself conduct a limited search of the subject's outer clothing "to discover weapons which might be used to assault him." *Id.* at 30. The Court stated further that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. The test, the Court said, is an objective one: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21-22.

■ Virginia Code § 19.2-83, cited by the defendant, is entitled "Authority of police officers to stop, question and search suspicious persons." Its text reads:

Any police officer may detain a person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or possesses a concealed weapon in violation of § 18.2-308, and may require of such person his name and address. Provided further, that such police officer may, if he reasonably believes that such person intends to do him bodily harm, search his person for a dangerous weapon, and if such person is found illegally to possess a dangerous weapon, the police officer shall take possession of the same and dispose of it as is provided by law.

In *Simmons* v. *Commonwealth,* 217 Va. 552, 231 S.E.2d 218 (1977), we considered both the *Terry* holding and Va. Code § 19.2-83. We noted that the language of the Code section which permits a police officer to detain a person he reasonably suspects "is committing, has committed or is about to commit a felony" is more stringent than the language of *Terry* which permits an officer to detain a person where the officer observes unusual conduct which leads him reasonably to conclude that "criminal activity may be afoot." 217 Va. at 557, 231 S.E.2d at 221-22. We emphasized, however, in affirming the trial court's decision, that our statute also permits a police officer to stop a person he reasonably suspects of possessing a concealed weapon and, if he reasonably believes the person intends to do him bodily harm, may search the subject's person for a weapon. *Id.,* 231 S.E.2d at 222. In this latter respect, our statute comports fully with *Terry.*

We believe *Simmons* provides substantial support for affirming the trial court's decision here. Indeed, from a factual standpoint, the present case is even stronger than *Simmons* for upholding the action of the police.

In *Simmons,* John Gillen, a patrolman assigned to duty in a highrise business community in Arlington, received a complaint during daylight hours of a suspected burglary in an office building. Investigating, Gillen observed outside a nearby bank a subject matching the description of the suspect. The officer also noted that the suspect's jacket sagged in front, suggesting there was something in the jacket pocket. Believing that the pocket con-

tained a weapon and that he might be in danger, Gillen radioed for assistance. He then confronted the suspect and conducted a "pat down" of the subject's outer clothing. Feeling a hard object he believed might be a weapon, Gillen removed the object from the jacket pocket; he discovered the object was a tape recorder bearing a label that indicated it belonged to a nearby business. Upon the subject's refusal to state where he obtained the recorder, Gillen placed him under arrest. The suspect was later indicted for grant larceny and convicted of petit larceny.

Rejecting arguments similar to those advanced by the defendant here, we affirmed. Applying principles enunciated in *Terry, Adams* v. *Williams,* 407 U.S. 143 (1972), and *Howard* v. *Commonwealth,* 210 Va. 674, 173 S.E.2d 829 (1970), we said that Officer Gillen was justified in stopping the suspect to investigate his suspicious behavior "even though there was no probable cause to make an arrest." *Simmons,* 217 Va. at 555, 231 S.E.2d at 220-21. Then, citing *Terry* and *Sibron* v. *New York,* 392 U.S. 40 (1968), we stated that a policeman in Officer Gillen's situation need not be absolutely certain that the subject is armed; if the officer "reasonably believes that the individual might be armed, the search is warranted to protect himself or others who may be in danger." 217 Va. at 556, 231 S.E.2d at 221. Finally, referring to *People* v. *Allen,* 50 Cal. App. 3d 896, 123 Cal. Rptr. 80 (1975), we said it made no difference that the object removed from the suspect's person was not a weapon; to justify removal, "it was only necessary that the officer reasonably believed that the object could be a weapon." 217 Va. at 556, 231 S.E.2d at 221.

Here, at night, Officer Missouri observed a van operating in a grossly reckless manner under circumstances suggesting that its occupants were engaged in "possibly criminal behavior" or that they were fleeing from the scene of a crime. The situation appeared sufficiently aggravated to Officer Missouri that he felt it necessary to radio for assistance. After attempting unsuccessfully to elude arrest, the driver brought the van to a halt in an unlit area. With "no rear windows or side windows" in the van, the actions of the occupants were hidden from Officer Missouri. None of the occupants could produce any personal identification or any registration for the van.

Further, Officer Missouri testified that he "didn't know what was going on in the van." He said also that he "was concerned for [his] safety being that there were no streetlights on that portion of

the highway." Finally, the officer stated that he was "concerned about [the occupants] possibly having weapons to make an assault on [him] regarding the traffic stop."

We believe that the foregoing recitals demonstrate, in the language of *Terry,* 392 U.S. at 21, the "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed] [the] intrusion" that occurred here when Officer Missouri ordered the defendant from the van and detained him until he was frisked by Officer Alt. We believe further that "the facts available to [Officers Missouri and Alt] at the moment of the seizure or the search [would] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate," thus satisfying the objective test set forth in *Terry. Id.* at 21-22.

In reaching this conclusion, we are not unmindful of the fact that the defendant was a mere passenger in the van. Under the circumstances of this case, however, we do not believe that the defendant's status in the van makes any legal difference. If, as we now hold, Officer Missouri was justified in believing the van's occupants might be armed, the possible danger to the officer would have been just as great from an armed passenger as from an armed driver. The law does not expect that a police officer must gamble on turning away from a possible danger and chance taking a bullet in the back merely because of the status of a vehicle's occupants.

But, the defendant argues, Officer Missouri conceded on the witness stand that he had no reason to stop the van other than the actions of the van itself and that the defendant individually did nothing to indicate he possessed a concealed weapon, posed any danger to the officer, or had committed any crime. Hence, the defendant concludes, his detention was "unjustified and unlawful."

Missouri's concessions, however, obviously were the result of an after-the-fact appraisal of the situation, and they neither lessen the fact that he did have ample cause to stop the van nor take away from his on-the-scene concern for his safety and his fear that the van's occupants might have weapons "to make an assault on [him]." In determining whether to detain the defendant, Missouri was entitled to rely upon "the totality of the circumstances — the whole picture." *United States* v. *Cortez,* 449 U.S. 411, 417 (1981); *Leeth* v. *Commonwealth,* 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982). We believe that, in view of "the whole picture,"

one presenting the threat of three possibly armed subjects, the defendant's detention was justified.

The defendant argues further that, "regardless of the legality of the detention itself," the frisk was unlawful. Under *Terry,* the defendant maintains, an officer may frisk a subject only "where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety." 392 U.S. at 30. Here, the defendant says, within two or three minutes after the occupants exited the van, Officer Alt arrived to assist Officer Missouri and, hence, Missouri had no reason to fear harm from the defendant at the time of the frisk.

We do not agree with the defendant. If, as we have held, Officer Missouri initially had reasonable grounds to fear for his safety, we cannot say as a matter of law that the fear should have been dispelled by Officer Alt's arrival on the scene. Under the circumstances, the only eventuality that would have dispelled Missouri's fear was the knowledge that the occupants were not armed, a fact that could be determined only by the frisk itself.

Next, the defendant argues that "the search here exceeded that permissible under *Terry* or under Virginia Code Section 19.2-83" because it was not reasonably limited in scope to the protection of the police; an officer conducting a *Terry* frisk may seize an object only if he reasonably believes the object is a weapon. Yet, the defendant says, Officer Alt removed from the defendant's shirt pocket the rectangular brass box and the credit card; Alt then looked into the brass box, which was not a weapon and contained no weapons, and read the name on the credit card, which obviously was not a weapon.

Concerning the brass box, as we noted in *Simmons,* it makes no difference that the object removed from a subject's person is not a weapon. To justify removal, it is only necessary that the officer reasonably believes the object could be a weapon, 217 Va. at 556, 231 S.E.2d at 221; the evidence sustains Officer Alt's belief in this respect. With regard to the credit card, we agree with the trial court that, because this item's "discovery [was] inadvertent and not the object of a pretext search," its seizure was not unlawful.

The defendant argues also that the evidence failed to establish probable cause for his arrest on the charge of possessing a stolen credit card. We disagree. We believe, as the trial court found, that from the totality of circumstances in this case, the po-

lice had probable cause to arrest the defendant upon discovering the credit card.

■ It follows that the search of the defendant's person, during which the jewelry was found, was proper as a search incident to arrest. And it is not important that this search may have preceded the arrest, as Officer Missouri's testimony indicated, or followed the arrest, as Officer Alt stated in his testimony. Even under Missouri's version, the arrest "followed quickly on the heels of the challenged search," and this was sufficient to establish the legality of the search. *Rawlings* v. *Kentucky,* 448 U.S. 98, 111 (1980); *Wright* v. *Commonwealth,* 222 Va. 188, 193, 278 S.E.2d 849, 852-53 (1981).

## II. Suppression of Oral Statements

■ The defendant also contends that the trial court erred in refusing to suppress statements he made to the Loudoun County officers in the interview which took place in Arlington on March 23, 1981. The defendant says the evidence fails to show that he "made a knowing and voluntary waiver of his *Miranda* rights in so far as any statements concerning the Loudoun County offenses are concerned."

The defendant's argument on this point is unclear. He says that, although he signed a waiver form on March 23, 1981, the form was signed "in anticipation of questioning on other charges against [him] and there was no discussion regarding the Loudoun County charges." He then cites two pages of the appendix, but neither these pages nor others in the appendix indicate any deception by the police in securing the defendant's signature on the waiver form. If deception is the basis of this argument, we reject the argument. In any event, the record shows that the defendant knowingly and voluntarily waived his *Miranda* rights with respect to the March interview.

## III. Instructions

■ In his final contention, the defendant points out that the trial court granted instructions which told the jury that grand larceny is a lesser included offense of robbery and permitted a finding that he was guilty of larceny from proof of the exclusive possession of recently stolen goods. These instructions, the defendant argues, confused the jury and created the "very real possibil-

ity" that the jury would infer guilt of robbery as a result of his possession of stolen property.

We disagree with this argument. In Instruction No. 12, the trial court clearly told the jury that the "mere possession of recently stolen property by [the defendant], even if unexplained or falsely denied, is not sufficient evidence to support a conviction of robbery, but is merely one circumstance which may be considered." In view of this statement, we do not see how the jury could possibly have been confused about the way to treat the defendant's possession of stolen goods.

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*

POFF, J., dissenting.

I disagree with the majority view. The Fourth Amendment protects the people against "unreasonable searches and seizures" of their "persons . . . and effects". A "stop and frisk" is a seizure and a search of the person within the contemplation of the Fourth Amendment. *Terry* v. *Ohio,* 392 U.S. 1, 16 (1968). But the seizure and search are not constitutionally "unreasonable" intrusions when a police officer can "point to specific and articulable facts", *id.* at 21, which lead him "reasonably to conclude . . . that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous", *id.* at 30.

In the stop and frisk context, the Fourth Amendment guarantee as defined in *Terry* is less protective of the rights of a suspect than the provisions of Code § 19.2-83. *Simmons* v. *Commonwealth,* 217 Va. 552, 557, 231 S.E.2d 218, 221-22 (1977). Unde. ꞁur statute, a police officer may "detain a person in a public place" and "require of such person his name and address", but only if the officer "reasonably suspects" that such person "is committing, has committed or is about to commit a felony or possesses a concealed weapon"; if the detention is lawful, the officer may search the suspect, but only "for a dangerous weapon" and only if the officer "reasonably believes that such person intends to do him bodily harm".

The seizure in issue here is not the stop of the van but the detention of the defendant. A seizure occurs "when the officer, by

means of physical force or show of authority, has in some way restrained the liberty of a citizen." 392 U.S. at 19 n. 16. The defendant was detained or seized when he was required to exit the van, place his hands on the vehicle and remain in that posture at gun point until the arrival of Officer Alt. Officer Missouri, who was unaware of the Loudoun County robbery, had no credible reason to believe that the defendant, a passenger in the van, was guilty of complicity in any criminal activity, felonious or otherwise, past, present, or planned. Hence, the seizure was not authorized under either the *Terry* test or the Virginia statute unless Missouri was justified in believing that the defendant might be "armed and presently dangerous", 392 U.S. at 30, or that the defendant "possesse[d] a concealed weapon", Code § 19.2-83.

Such a belief can be justified under *Terry* only by "specific and articulable facts" and, under the rationale invoked by the majority, only by "the totality of the circumstances". What were the facts and circumstances summarized by the majority? The driver committed a number of traffic violations. But traffic violators are seldom armed and, more rarely, their passengers. The van had no rear or side windows, and Officer Missouri "didn't know what was going on in the van." Whatever relevance that fact may have had disappeared once the occupants exited the van. The night was dark, Officer Missouri was alone, none of the occupants could produce any personal identification, and doubtless the confrontation was tense. Do such circumstances justify a belief that the defendant or any of his companions were armed and dangerous? Although Officer Missouri testified on direct examination that he was "concerned about them possibly having weapons", he acknowledged on cross-examination that he observed nothing "on the defendant . . . that appeared to be a weapon" and that the defendant did nothing "to indicate that he posed any danger." The officer's testimony alone is sufficient to distinguish *Simmons* where the officer felt himself endangered by a weapon when he observed a bulge in the suspect's pocket.

I do not believe that "the facts available to the officer at the moment of the seizure or the search [would] 'warrant a man of reasonable caution in the belief'", 392 U.S. at 21-22, that the defendant was guilty of criminal activity, that he was armed, or that he intended to do the officer bodily harm. In such case, neither the seizure nor the search was authorized under either the *Terry* test or the statutory standard. In my view, the trial court

erred in overruling the defendant's motions to suppress, and I would reverse the judgment and remand the case for a new trial.