COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Agee and Senior Judge Hodges
Argued at Chesapeake, Virginia


REGINALD LEON GRAVES
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0611-00-1          JUDGE WILLIAM H. HODGES
                                         APRIL 3, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Randolph T. West, Judge

          Robert W. Jones, Jr. (Jones & Jones, P.C., on
          brief), for appellant.

          Susan M. Harris, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Reginald Leon Graves appeals his conviction after a bench

trial of carrying a concealed weapon, second offense.  He argues

that the trial court erred in admitting the Commonwealth's

evidence.  Graves contends that the evidence was obtained as a

result of an illegal search.  For the reasons that follow, we

disagree and affirm his conviction.

                          BACKGROUND

     Viewed in the light most favorable to the Commonwealth,

Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47,

48 (1991), the evidence proved that on January 18, 1999 several

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

police units were dispatched to the Courthouse Green area of Newport News in response to a report that several black males were standing on the corner using and selling narcotics.  Among the officers at the scene was Officer J.S. Collins, who testified that the Courthouse Green area is known as a high crime area and that in the past he had responded to several shootings and robberies in the neighborhood.  When Collins arrived, there were already several other officers on the scene, so he took a position in the nearby parking lot to watch.

Graves began to walk across the parking lot, away from the scene.  A fellow officer motioned to Collins that he should stop Graves.  Collins got out of his car as Graves was walking towards him.  Collins asked if he could speak with Graves when they were still some distance apart.  Graves had his right hand in the pocket of the jacket he wore.  Concerned for his safety, Collins asked Graves to remove his hand from his pocket.  Graves hesitated for a moment, but then removed his hand.  Immediately, Collins noticed that Graves carried something heavy in the pocket.  Collins saw that the lightweight jacket Graves wore was being stretched down by the weight of the object.  Believing the object to be a gun, Collins explained to Graves that he was not under arrest, but that Collins needed to pat him down for weapons.  Graves objected and then tried to run away.  Collins then grabbed Graves' right arm and handcuffed him with the assistance of another officer.  Collins found a loaded pistol in Graves' pocket.

-

ANALYSIS

Collins' meeting with Graves began as a consensual encounter. When Collins first saw Graves he said, "Hey, how are you doing" and asked if he could speak to Graves for "just a second." Graves continued to walk towards the police officer.

> A law enforcement officer does not implicate the Fourth Amendment by approaching a citizen in a public place for the purpose of asking the individual his name and address. Furthermore, a consensual encounter between the police and a citizen becomes a seizure for Fourth Amendment purposes "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." In order for a seizure to occur, the police must restrain a citizen's freedom of movement by the use of physical force or show of authority.

Ford v. City of Newport News, 23 Va. App. 137, 141-42, 474 S.E.2d 848, 850 (1996) (citations omitted); see also United States v. Mendenhall, 446 U.S. 544, 554-55 (1980) (holding that Fourth Amendment rights are not implicated by consensual encounters between citizens and the police). Collins did not block Graves' departure, command him to stop or draw his weapon.

Graves did not respond to Collins' initial questions and continued to walk towards the officer with his hand in his pocket. Concerned for his safety, Collins asked Graves to remove his hand from his pocket. Graves hesitated, increasing Collins' belief that Graves carried a weapon. When Graves removed his hand, Collins could see that the object in Graves'

-

pocket was heavy and bulky.  Collins then told Graves that he needed to pat him down to check for weapons.

> It is not unreasonable for a police officer to conduct a limited pat-down search for weapons when the officer can point to "specific and articulable facts" "which reasonably lead[] him to conclude, in light of his experience, that 'criminal activity may be afoot' and that the suspect 'may be armed and presently dangerous.'"

James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (quoting Lansdown v. Commonwealth, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968))).

"An officer is entitled to view the circumstances confronting him in light of his training and experience . . . ." Id.  Among the circumstances to be considered in such situations are

> "the 'characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence[,]" . . . [and] the character of the offense which the individual is suspected of committing . . . .

Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987) (quoting United States v. Bull, 565 F.2d 869, 870-01 (4th Cir. 1977)).

In light of the police dispatch of illegal drug activity in a known high-crime area, appellant's hesitance in removing his hand from his pocket, and Collins' subsequent observation that

-

a heavy object was located in appellant's jacket, the officer "had specific and articulable facts giving rise to the reasonable belief appellant 'might be armed and dangerous.'" Welshman v. Commonwealth, 28 Va. App. 20, 35, 502 S.E.2d 122, 129 (1998).  As a result, Collins properly performed a pat-down search of Graves.  Accordingly, the decision of the trial court is affirmed.

                                                Affirmed.

Benton, J., dissenting.

"The right of the people to be secure in their persons, . . . and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."  United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975).  "In a long line of cases, [the United States Supreme] Court has stressed that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions.'"  Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984) (citation omitted).

"While law enforcement officers may engage in consensual encounters with citizens, the Supreme Court has limited such encounters to those in which 'a reasonable person would feel free "to disregard the police and go about his business."'"  Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000) (citation omitted).

> A consensual encounter occurs when police officers approach persons in public places "to ask them questions," provided "a reasonable person would understand that he or she could refuse to cooperate."  United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991) (quoting Florida v. Bostick, 501 U.S. 429, 431 (1991)); see also Richards v. Commonwealth, 8 Va. App. 612, 615, 383

-

S.E.2d 268, 270 (1989). Such encounters . . . remain consensual "as long as the citizen voluntarily cooperates with the police." Wilson, 953 F.2d at 121. Fourth Amendment scrutiny is triggered, however, the moment an encounter "'loses its consensual nature.'" Id. (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)).

Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992).

At its most fundamental level, a consensual encounter only occurs when a person approached by the police has "the ability to ignore the police and to walk away from them." Wilson, 953 F.2d at 122. Clearly then, when a person rebuffs a police officer's attempt at a consensual encounter, that action standing alone evinces a lack of consent. Any resulting detention is a seizure that implicates constitutional requirements. Moreover, when the existence or validity of any consent is at issue, "the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given." Florida v. Royer, 460 U.S. 491, 497 (1983). "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968).

The majority opinion misperceives the nature of the encounter when it states the encounter began consensually. The testimony of the officer who stopped Reginald Leon Graves clearly established that Graves merely happened to be walking

-

near an area where the police had detained other persons.  He

described the initial detention as follows:

> I was dispatched -- there were several
> units dispatched to the area . . . in
> reference to several . . . subjects standing
> on the corner using and/or selling
> narcotics.  When I arrived to that location
> to investigate -- the other officer had
> arrived prior to my arrival, and he was
> engaged in a conversation with several of
> the subjects.  At that time, I took up a
> position in the parking lot just to observe
> because it appeared that they had everything
> under control.
>
> As I sat in the parking lot, Officer
> Matthews motioned to me to stop a subject
> who was walking through the parking lot
> towards my location, subsequently identified
> as Mr. Graves.

The officer then approached and detained Graves.  The fact

that he subjectively wanted to engage Graves in a consensual

encounter did not make it so.  Graves' conduct clearly

demonstrates that he did not consent to the encounter.  Graves

continued to walk as the officer spoke to him.  The officer

"[did not] recall if [Graves] stopped" as he called to Graves.

Thus, the evidence established no indication of Graves'

willingness to stop and converse with the officer.

When the officer commanded Graves to remove his hand from

his pocket, Graves hesitantly did so but resisted when the

officer told him that he "needed to pat him down for weapons."

The officer testified that "Graves took several steps backwards

and stated, 'For What?  You're not touching me.'"  The officer

-

then grabbed Graves' arm. If there could be any doubt that the detention was not consensual, this evidence undisputedly proves that when the officer gave these commands and met resistance the encounter was not consensual.

The Fourth Amendment protects a person's privacy from unreasonable interference by the police, even when the police seek only to engage in a brief stop and questioning concerning a person's identity. Brignoni-Ponce, 422 U.S. at 878. Indeed, the principle is well settled that "while the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes they have no right to compel them to answer." Davis v. Mississippi, 394 U.S. 721, 727 n.6 (1969). Terry v. Ohio, 392 U.S. 1, 19 (1968), teaches that "[o]nce a citizen withdraws his consent to further questioning by the police, the reasonableness of any subsequent 'governmental invasion of a citizen's personal security' is gauged by the Fourth Amendment." Wilson, 953 F.2d at 121.

The evidence proved the officer detained Graves in a "Terry stop" without the necessary articulable facts supporting a reasonable suspicion that Graves had committed a criminal offense, was engaging in a criminal offense, or was about to engage in a criminal offense. "[A] reasonable suspicion [is one, which must be] based on objective facts, that the individual is involved in criminal activity." Brown v. Texas, 443 U.S. 47, 51 (1979). "A reasonable suspicion is more than an

-

'unparticularized suspicion or "hunch."'"  Bass v. Commonwealth,
259 Va. 470, 475, 525 S.E.2d 921, 923 (2000) (quoting Terry, 392
U.S. at 27).

The detention was unlawful because the evidence fails to
establish a reasonable suspicion that Graves had any connection
to criminal activity.  The officer's testimony proved only that
Graves was walking in a neighborhood known for crime, that he
had a heavy object in one of his pockets, that he hesitated to
take his hand out of that pocket, and that he refused to show
the object to the officer.  These facts fail to establish a
reasonable suspicion of criminal activity.

Graves' hesitation demonstrates only his lack of consent.
Indeed, he more stridently manifested his lack of consent when
he said "You're not touching me."  I disagree with the
majority's suggestion that Graves' refusal qualifies as an
"obvious attempt to avoid officers or [as] nervous conduct on
the discovery of their presence."  Williams v. Commonwealth, 4
Va. App. 53, 67, 354 S.E.2d 79, 87 (1987).  This lack of consent
cannot provide the officer with a reason to search Graves.
Otherwise, citizens would face a Catch-22 situation in which
their refusal to consent to a search forms the basis for a
reasonable suspicion that they are engaged in criminal activity.

The officer claimed he wanted to search Graves because he
feared for his safety.  The Commonwealth asserts that a
reasonable officer would fear being shot in this situation.  No

-

evidence proved, however, that Graves threatened the officer. Graves merely walked across the parking lot and was detained by the officer. The officer could not reasonably suspect that an individual walking through a neighborhood with an unknown object in his pocket wanted to shoot a police officer. No evidence connected Graves to the men the officers had detained. Graves' conduct indicated only that he was passing through the area. He was free to ignore the officers, who had detained other men, and walk away.

That Graves was walking in a neighborhood while the police were detaining suspected drug users was not a basis for concluding that Graves was engaged in criminal conduct. See Brown, 443 U.S. at 52. Reasonable suspicion is more than a mere hunch. Bass, 259 Va. at 477-78, 525 S.E.2d at 925.

> When the officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment. . . . The Fourth Amendment, of course, "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. '[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person,' and the Fourth Amendment requires that the seizure be 'reasonable.'"

Brown, 443 U.S. at 50 (citations omitted).

I would hold that at the moment Graves ignored the officer's inquiry and continued on his path, he demonstrated his

-

refusal to engage in a consensual encounter.  His subsequent words and conduct reinforced his lack of consent.

> In this context, freedom to leave means fundamentally the freedom to break off contact, in which case officers must, in the absence of objective justification, leave a [person] alone.  [Graves] possessed at a minimum the right to refuse to speak with the officers, who in turn possess no right to detain citizens who decline to talk or otherwise identify themselves. . . .  To hold otherwise would begin to transform this free society into one where [persons] must present papers or proffer explanations to be on their way.

United States v. Flowers, 912 F.2d 707, 712 (4th Cir. 1990) (citation omitted).

For these reasons, I would hold that the resulting search was violative of the Fourth Amendment.  Therefore, I would reverse the conviction and dismiss the indictment.