COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Beales and Chafin
Argued at Richmond, Virginia

UNPUBLISHED

KEMON ALTON MILES

MEMORANDUM OPINION[*] BY
v.        Record No. 1412-12-2          JUDGE TERESA M. CHAFIN
FEBRUARY 11, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Cassandra M. Hausrath, Supervising Assistant Public Defender
(Office of the Public Defender, on briefs), for appellant.

Lauren C. Campbell, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Kemon Alton Miles ("Miles") was convicted of possession of cocaine with intent to

distribute and possession of heroin with intent to distribute in violation of Code § 18.2-248 in the

Circuit Court of the City of Richmond ("circuit court").[1]  On appeal, Miles contends that the

circuit court erroneously denied his motion to suppress drugs and other physical evidence

recovered from his person.  Specifically, Miles argues that the circuit court erred by denying his

motion to suppress because the pat-down search that found the drugs and other physical evidence

was unreasonable in its scope and violated his Fourth Amendment rights.  Miles also argues that

he did not consent to this search initially and that he subsequently withdrew any consent he had

given.  For the following reasons, we hold that the circuit court correctly denied Miles's motion

to suppress, and accordingly, we affirm Miles's convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although Miles was also convicted of possession of marijuana in violation of Code
§ 18.2-250.1, this conviction is not the subject of this appeal.

# I. BACKGROUND

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). While we are bound to review *de novo* the ultimate questions of law raised by the case, we "review findings of historical fact only for clear error[2] and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

When the evidence presented in this case is viewed in the light most favorable to the Commonwealth, it establishes that Officers Sergio Montalban ("Montalban") and Donnell Patterson ("Patterson") of the Richmond Police Department were patrolling the Gilpin Court public housing complex on August 24, 2012. The officers knew that the Gilpin Court area was a high crime area with frequent drug activity, gun violence, and homicides. Around 3:00 a.m., the officers observed Miles and two other men walking in the Gilpin Court area. The officers got out of their patrol vehicle and approached the men to investigate whether they were trespassing.[3]

The officers asked Miles and the other men if they lived in the housing complex and requested their identification. Miles told the officers that he was staying with a relative that lived in the area. During this encounter, Miles appeared nervous and turned the right side of his body away from the officers in an apparent effort to shield that area from their view. Both officers

---

[2] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'" McGee, 25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1 (citations omitted).

[3] The Richmond Redevelopment Housing Authority prohibited trespassing in Gilpin Court.

-2-

observed a bulge underneath Miles's clothing near the right rear waistline or hip area of his oversized pants.[4]

Montalban asked Miles if he had any weapons on his person, and Miles answered that he did not. Montalban then asked Miles if he could search him for weapons. Although he made no verbal response to this request, Miles raised his arms above his head.[5] The officers interpreted this action as consent to a pat-down search, and Montalban proceeded to pat Miles down for weapons to ensure the officers' safety. During the pat down, Miles brought his elbows down to his sides when Montalban came near the bulge. When Montalban asked Miles to raise his arms, Miles did so, but he continued to lower his elbows each time that Montalban got close to the bulge. After Miles lowered his elbows for a third time, the officers attempted to place him in handcuffs. A struggle ensued, but Miles was eventually handcuffed. Miles did not request the officers to stop the pat down at any time during the search.

After Miles was handcuffed, Patterson conducted an open hand pat down over the outside of Miles's clothing. When he patted down the bulge, he felt a hard object approximately three to four inches long in Miles's pocket. Based on his experience as a police officer and the physical properties of the object, Patterson believed that the object could be a weapon. Patterson had received training on how to identify an armed party and had seen armed individuals display behavior similar to that of Miles. Patterson believed the hard object could have been a knife, a

---

[4] Although both officers testified differently concerning the exact location of this bulge, both officers testified that they observed a bulge in the general area of the right side of Miles's waist.

[5] Montalban gave conflicting testimony concerning this exchange at the motion to suppress hearing and at trial. At the motion to suppress hearing, Montalban testified that Miles raised his arms after he was asked whether he would consent to a pat down for weapons. At trial, however, Montalban testified that Miles raised his arms after he asked him if he had any weapons. On appeal, we view this conflicting testimony in the light most favorable to the Commonwealth, as the prevailing party below. See McGee, 25 Va. App. at 197, 487 S.E.2d at 261.

-3-

taser, or the butt of another weapon. Patterson reached into Miles's pocket to investigate the hard object and removed the contents of the pocket. The pocket contained a cell phone and a large plastic bag containing marijuana, ten individually wrapped rocks of crack cocaine, five individually wrapped packets of heroin, and thirty dollars.

Prior to his trial, Miles moved to suppress the evidence recovered from his pocket. The circuit court held that the officers had reasonable grounds for stopping Miles,[6] that Miles consented to the pat down, and that the officers reasonably believed that the hard object in Miles's pocket was a weapon. The circuit court denied Miles's motion to suppress based on these grounds. The circuit court found Miles guilty of the possession offenses following a bench trial, and Miles appealed these convictions to this Court.

## II. ANALYSIS

Under the circumstances of the present case, the officers had reasonable articulable suspicion that Miles may have been carrying a concealed weapon. Therefore, the officers were justified in patting down Miles for weapons to ensure their personal safety pursuant to Terry v. Ohio, 392 U.S. 1 (1968). The pat-down search of Miles was reasonable in its scope and justified by the circumstances. Accordingly, the circuit court did not err in denying Miles's motion to suppress the evidence recovered from his person in the course of the pat down.[7]

---

[6] Although we note that mere presence on the property of an apartment complex posted as a "no trespassing" area does not in itself establish a reasonable suspicion of trespassing, see Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 723 (1997), Miles does not challenge the legality of his initial interaction with the officers on appeal. Miles does not argue that his pre-pat-down interaction with the officers was a stop requiring reasonable suspicion rather than a consensual encounter, or that the officers lacked reasonable suspicion justifying their initial interaction with Miles. Accordingly, we refrain from addressing these issues. See Rule 5A:20.

[7]     On appeal, we may affirm on grounds different from those on which the trial court based its decision so long as the issue was addressed at trial, evidence exists in the record to support those alternate grounds, the trial judge's decision does not reject those

-4-

"Street encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations of armed men involving arrests, or injuries, or loss of life." Terry, 392 U.S. at 13.

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity is afoot and that the persons with whom he is dealing may be armed and presently dangerous, . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

Id. at 30. "The sole justification of the search . . . is the protection of the police officers and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Id. at 29. However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27.

In determining whether a police officer had reasonable suspicion to justify an investigatory stop and pat-down search, "an officer is 'entitled to rely upon the totality of the circumstances – the whole picture.'" Andrews v. Commonwealth, 37 Va. App. 479, 491, 559

grounds, and no further factual resolution is necessary to support the decision.

Debroux v. Commonwealth, 32 Va. App. 364, 371-72, 528 S.E.2d 151, 155, aff'd en banc, 34 Va. App. 72, 537 S.E.2d 630 (2000). Although the circuit court held that Miles initially consented to the pat down and that he did not subsequently withdraw that consent, the issue of whether or not Miles consented to the search is irrelevant in light of the evidence in the record. The evidence in this case establishes that the officers had reasonable articulable suspicion that Miles was armed and, if so, that the weapon was probably concealed. Due to this reasonable suspicion, the officers did not need Miles's consent in order to pat him down for weapons. Although we note without deciding that Miles may or may not have withdrawn his consent to the pat down by repeatedly lowering his arms and otherwise resisting the search, Miles's consent is irrelevant in the presence of reasonable suspicion supporting the search. Therefore, we do not address Miles's argument concerning his consent to the pat down in this opinion.

S.E.2d 401, 407 (2002) (quoting Peguese v. Commonwealth, 19 Va. App. 349, 351, 451 S.E.2d 412, 413 (1994) (*en banc*)). "The officer is . . . entitled 'to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person.'" Id. (quoting James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996)). Other relevant circumstances in this analysis include the "characteristics of the area surrounding the stop, the time of the stop, . . . [and] the character of the offense under suspicion . . . ." McCain v. Commonwealth, 275 Va. 546, 554, 659 S.E.2d 512, 517 (2008). "[W]hile a suspect's presence in a high crime area, standing alone, is not enough to support a reasonable particularized suspicion, it is a relevant contextual consideration in a Terry analysis." Whitaker v. Commonwealth, 279 Va. 268, 276, 687 S.E.2d 733, 737 (2010). A reasonable suspicion that a suspect is carrying a concealed weapon (without a permit to do so) establishes the reasonable suspicion of criminal activity required by Terry. See Code § 18.2-308; Beasley v. Commonwealth, 60 Va. App. 381, 398, 728 S.E.2d 499, 507 (2012).

In the present case, the officers had reasonable articulable suspicion that Miles was carrying a concealed weapon. When the officers encountered Miles, he was walking with two other men in a known high crime area at 3:00 a.m. Miles appeared nervous when the officers approached him and positioned his body in a way that concealed his right side during their interaction. Patterson testified that he had seen armed individuals attempt to conceal a particular side of the body like this before both in his experience as a police officer and in his personal life. More importantly, however, both officers testified that they saw a bulge under Miles's clothing near the right hip or waist area of his body. Although the testimony from each officer concerning the bulge differed slightly, both officers observed a bulge in this general area. Patterson specifically testified that he believed this bulge could have been a weapon in light of the circumstances. These facts support the officers' reasonable suspicion that Miles could have

been armed. Further, Miles's evasive behavior and attempts to conceal the bulge suggested that he did not want the officers to notice it, and implied that, if the bulge was a weapon, that Miles was carrying it without a permit allowing him to lawfully conceal it. Under these facts, the officers' pat-down search of Miles was valid.

When the officers attempted to perform the weapons pat down, Miles resisted by lowering his arms and eventually had to be handcuffed.[8] Patterson then conducted a flat hand pat down of Miles's person. When Patterson patted down the bulge that he suspected was a weapon, he felt a hard object that was approximately three to four inches long in Miles's pocket. Patterson believed this object could have been a knife, taser, or the butt of another type of weapon. Patterson then reached into Miles's pocket to investigate the object causing the bulge, and removed the contents of the pocket.

"To justify removal [of an object from a suspect's person], it is only necessary that the officer reasonably believes the object could be a weapon." Lansdown v. Commonwealth, 226 Va. 204, 213, 308 S.E.2d 106, 112 (1983). If the officer removes the object with the reasonable belief that it could be a weapon, it is irrelevant if that object turns out to be contraband or another object that is not a weapon. See id. (officer justified in removing a brass box from suspect's pocket); Simmons v. Commonwealth, 217 Va. 552, 556-57, 231 S.E.2d 218, 221-22 (1977) (officer justified in removing a tape recorder from suspect's jacket); James, 22 Va. App. at 745-46, 473 S.E.2d at 92 (officer justified in removing a three to four inch glass smoking device from suspect's pocket).

Here, Patterson felt a hard object in Miles's pocket that he believed could have been a weapon. Miles's pocket, however, contained multiple objects. Although the pocket contained both a cell phone and a plastic bag containing drugs and other items, the record fails to indicate

---

[8] These additional attempts to prevent the officers from investigating the bulge strengthened the inference that Miles was unlawfully carrying a concealed weapon.

-7-

that these objects were positioned in Miles's pocket in such a way that they were identifiable as separate objects based only on a pat down. Since the Commonwealth prevailed below, we must "accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). Patterson did not testify that he differentiated between these objects before he removed them from Miles's pocket. Patterson only conducted a brief, flat hand pat down of Miles's pocket, and did not otherwise manipulate the objects before he removed them. Patterson also did not testify that he felt the hard object in one area of Miles's pocket and felt other objects separate and apart from the hard object in other areas. Rather, he testified that he felt *a* bulge in Miles's pocket, not that he felt multiple bulges. Under these circumstances, the circuit court could reasonably infer that the objects Patterson removed from Miles's pocket collectively constituted the bulge that he believed could have been a weapon.[9]

"The touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991). Patterson's belief that the bulge in Miles's pocket could have been a weapon was reasonable under the facts of this case. He felt a hard object he believed could be a knife, taser, or other weapon in the pocket of an individual who had exhibited evasive behavior in a high crime area at night. As Patterson reasonably believed that the bulge could have been a weapon, he was justified in removing the contents of the pocket creating the bulge to determine whether Miles had a weapon. Therefore, the removal from Miles's pocket of the cell phone and drugs constituting the bulge did not exceed the scope of Patterson's valid pat down of Miles for weapons.

As the officers had reasonable articulable suspicion that Miles was carrying a concealed weapon, they were justified in patting him down for weapons. Following the pat down,

_____

[9] The record also does not indicate that Patterson removed the objects from Miles's pocket separately.

-8-

Patterson reasonably believed that the hard bulge in Miles's pocket could have been a weapon. He was therefore justified in removing the contents of Miles's pocket creating that bulge in order to determine if he was armed. For these reasons, the circuit court did not err in denying Miles's motion to suppress the evidence recovered from his pocket. Accordingly, we affirm Miles's convictions.

<u>Affirmed.</u>